# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

| | |
|---|---|
| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE |

| Stephen Montes | Not Reported | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: |
|---|---|

**Proceedings:**    IN CHAMBERS (No Proceedings Held)

## I.  INTRODUCTION

On March 3, 2008, Plaintiffs Natural Resources Defense Council ("NRDC") and Santa Monica Baykeeper filed suit against Defendants the County of Los Angeles ("County"), the Los Angeles Flood Control District ("District"), and the individual County Supervisors and the Director of the Los Angeles County Department of Public Works in their official capacities, alleging that the County and the District violated several provisions in the National Pollutant Discharge Elimination System ("NPDES") Permit regulating municipal stormwater and urban runoff discharges within the County of Los Angeles (the "Permit").  In its June 20, 2008 Order, the Court denied Defendants' motion to stay the case and granted in part and denied in part Defendants' motion to dismiss, finding that Plaintiffs had failed to provide adequate notice to the District but allowing Plaintiffs to refile against the District after valid notice.  On September 19, 2008, Plaintiffs filed their First Amended Complaint ("FAC").

The FAC alleges six causes of action under the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251, *et seq.*, for: (1) causing and contributing to exceedances of water quality standards in the Santa Clara River watershed; (2) causing and contributing to exceedances of water quality standards in the Los Angeles River watershed; (3) causing and contributing to exceedances of water quality standards in the San Gabriel River watershed; (4) causing and contributing to exceedances of water quality standards and Total Maximum Daily Load ("TMDL") violations in the Malibu Creek watershed and at Surfrider Beach; (5) illegally discharging waste into the oceanic Area of Special

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

Biological Significance ("ASBS") between Mugu Lagoon in Ventura County and Latigo Point in Los Angeles County; and (6) failing to submit adequate Receiving Water Limitations ("RWL") Compliance Reports.

On September 8, 2009, Plaintiffs moved for partial summary judgment as to liability as to claims two and three (as to the District); as to the Surfrider Beach violations in claim four; and as to all of claims five and six. On September 14, 2009, Defendants filed their motion for summary judgment as to all counts. Plaintiffs have also filed a Motion for Leave to File Surreply in Opposition to Defendants' Motion for Summary Judgment, which the Court DENIES.[1] The Court held a hearing on the summary judgment motions on February 8, 2010. For the following reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion.[2] The Court also GRANTS IN PART AND DENIES IN PART Defendants' motion.[3]

Specifically, the Court DENIES summary judgment for both parties as to the watershed claims (claims one, two, three, and the Malibu Creek portion of claim four). The Court GRANTS summary judgment for the Plaintiffs on claim five and on the Surfrider Beach portion of claim four.[4] The Court GRANTS summary judgment for the

---

[1] Docket No. 173.

[2] Docket No. 87.

[3] Docket No. 113.

[4] The parties have notified the Court that Judge Yaffe of the Superior Court for the County of Los Angeles has stayed the operation of Los Angeles Regional Water Quality Control Board Order No. R4-2006-0074 (the "Regional Board Order"). Defendants' Notice of Los Angeles Superior Court Order, Ex. 1. This Regional Board Order amended the Permit to establish the TMDL limits at Surfrider Beach. Plaintiffs' Response to Defendants' Notice of Los Angeles Superior Court Order at 1. With this Regional Board Order stayed, the TMDL limits at Surfrider Beach at issue in claim four are not currently operational. The state court stay does not affect the Court's analysis as to liability on claim four. However, the state court proceeding may affect the remedies stage of this case. In addition, should Judge Yaffe invalidate the Regional Board Order, Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

Defendants on all portions of claim six except for the adequacy of the 2008 Compliance Reports' treatment of Surfrider Beach. The Court DENIES summary judgment for both parties as to the adequacy of the 2008 Compliance Reports' treatment of Surfrider Beach.

## II.    SUMMARY OF UNDISPUTED FACTS

The municipal separate storm sewer system ("MS4") in the Los Angeles County basin carries urban runoff from local storm drains to inland rivers and eventually to ocean waters. Plaintiffs' SUF ¶ 3. No treatment plant cleans the runoff before it enters the so-called receiving waters of the region, so the runoff can contain a number of untreated pollutants it acquires as it flows over streets, parking lots, commercial sites, and residential areas. Plaintiffs' SUF ¶ 2. The MS4 is a complicated web, with thousands of miles of storm drains, hundreds of miles of open channels, and hundreds of thousands of connections. Plaintiffs' SUF ¶¶ 4-5. The MS4 includes storm drains operated by—and runoff coming from—84 incorporated cities, in addition to that from the County and District. Defendants' SUF ¶ 8. The District owns, operates, and maintains approximately 500 miles of open channel and 2,800 miles of storm drains, which is more of the MS4 than all 84 co-permittee cities combined. Plaintiffs' SUF ¶¶ 20-21. The County owns and operates additional storm drains, separate from the District, that connect to the MS4. *Id.* at ¶ 22. The County has no central record of these storm drains and does not know their complete extent. *Id.*

The Regional Water Quality Control Board ("Regional Board"), an entity of the State of California, issued collectively to the County, the District, and these 84 cities a National Pollutant Discharge Elimination System ("NPDES") Permit required under the Clean Water Act. This Permit allows the Permittees to discharge stormwater runoff from the MS4, contingent on meeting a number of conditions. Defendants' SUF ¶ 7-9. Most notably, Part 2.1 of the Permit provides that "discharges from the MS4 that cause or contribute to the violation of Water Quality Standards or water quality objectives are prohibited." Defendants' SUF ¶ 12. The Permit incorporates water quality standards from the Los Angeles Region Basin Plan for the Coastal Watersheds of Los Angeles and Ventura Counties ("Basin Plan") and the California Ocean Plan ("Ocean Plan"). *See* Cal.

---

may move to vacate the judgment on this claim.

O
# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

Water Code §§ 13170.2 & 13240.

The Permit sets forth a monitoring program, which includes a requirement for the Principal Permittee (the District) to monitor the runoff flowing past seven specific mass emissions stations. Plaintiffs' SUF ¶¶ 23-24; Defendants' SUF ¶ 10. These mass emissions stations include the Malibu Creek, Los Angeles River, San Gabriel River, and Santa Clara River monitoring stations at issue in this case. The Los Angeles River and San Gabriel River mass emissions monitoring stations are located within the portion of the MS4 owned and operated by the Flood Control District. Plaintiffs' SUF ¶ 24. Monitoring data from the Los Angeles River and San Gabriel River mass emissions stations indicate that water quality standards have repeatedly been exceeded for a number of pollutants, including aluminum, copper, cyanide, fecal coliform bacteria, and zinc (the "standards-exceeding pollutants").[5] Plaintiffs' SUF ¶¶ 33-37.

The Permit's monitoring program also includes a requirement that water quality samples be taken five times per week at Surfrider Beach, a beach within the Santa Monica Bay. Plaintiffs' SUF ¶ 25. This monitoring shows that the water at Surfrider Beach has exceeded bacterial limits (including limits on total coliform, fecal coliform, and enterococcus) on dozens of occasions during summer dry weather seasons. Plaintiffs' SUF ¶¶ 25-28. The Regional Board has issued Notices of Violation to the County and the District (and the 84 cities that discharge to the MS4) indicating that discharges from the MS4 are causing or contributing to bacterial exceedances at Surfrider Beach. Colangelo Decl. Exs. G & H.

The California Ocean Plan prohibits the discharge of waste into the Malibu Area of Special Biological Significance ("ASBS"), which covers the 4-mile coastline from Latigo Point in Malibu to Laguna Point in Ventura. Plaintiffs' SUF ¶¶ 17, 42. Plaintiffs assert that this prohibition has been incorporated into the Permit. The District and the County own and operate drains (at least 13 District drains and 8 County drains) that discharge to the Malibu ASBS. Plaintiffs' SUF 45. County sampling of 11 of these drains in 2004 indicated that every single wet-weather event (rainstorm) sampled had discharges

---

[5] Neither party has provided the Court with monitoring data from the other mass emissions monitoring stations.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

exceeding bacteria limits. Plaintiffs' SUF ¶ 46. Sampling data collected by Santa Monica Baykeeper covering at least 2004-2006 show numerous instances of discharge from these drains exceeding applicable water quality standards. Plaintiffs' SUF ¶ 47.

The Permit also requires Permittees to submit to the Regional Board annual Receiving Water Limitations ("RWL") Compliance Reports describing the Permittee's plan to remedy violations of the permit "[u]pon a determination by either the Permittee or the Regional Board that discharges are causing or contributing to an exceedance of an applicable Water Quality Standard." Defendants' SUF ¶¶ 13-14. Defendants did not submit any Compliance Reports in 2003, 2004, or 2005. Plaintiffs' SUF ¶ 53. Defendants submitted Compliance Reports in 2006, 2007, and 2008, but the parties disagree as to whether these Reports satisfied the requirements under the Permit. Plaintiffs' SUF ¶¶ 54-62.

## III. LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the opposing party if that party does not present such specific facts. *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. *Id*.; *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Simply because the facts are undisputed does not make summary judgment appropriate. Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper. *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985).

## IV. ANALYSIS

### A. Threshold Issues: Standing and Notice

1. <u>Plaintiffs have standing to sue.</u>

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

Plaintiffs NRDC and Santa Monica Baykeeper have demonstrated that they have associational standing in this suit.

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

In order for Plaintiffs' members to have standing to sue on their own, they would have to show: (1) they have "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs' members use and enjoy the water bodies involved in this case for recreational and professional reasons, and their reasonable concern about exposure to pollutants has caused them to curtail their use of the Los Angeles River, San Gabriel River, Surfrider Beach, and the Malibu ASBS. Plaintiffs' SUF ¶¶ 68-70. The impairment of aesthetic, recreational, and professional interests is an injury in fact. *Laidlaw*, 504 U.S. at 184-85. Moreover, the Plaintiffs' members' injuries are caused in part by Defendants' MS4 discharges, and reducing those discharges would help to redress their injuries. Plaintiffs' SUF ¶ 71.

In addition, the lawsuit is germane to each Plaintiff's organizational purpose, as they are environmental organizations, and Santa Monica Baykeeper has a specific focus on protecting Santa Monica Bay. Plaintiffs' SUF ¶ 72. If, as here, associational plaintiffs do not seek individualized relief for their members that would require individualized proof, the participation of individual members is not required. *Hunt*, 432 U.S. at 343-44. Thus, Plaintiffs have standing to sue.

### 2.     Plaintiffs have provided sufficient notice.

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

Defendants ask the Court to reconsider its decision in its June 20, 2008 Order in light of a recent Ninth Circuit case addressing the notice requirement in CWA citizen suits and find that the Court has no jurisdiction to hear the claims against any defendant. *See Center for Biological Diversity v. Marina Point Development Co.*, 566 F.3d 794 (9th Cir. 2009); Motion at 10. *Marina Point Development* did not alter the standard for CWA notice in this Circuit; it merely reiterated the need for the notice to, at a minimum, tell a potential defendant "precisely what it allegedly did wrong, and when." *Id*. at 801.[6] Plaintiffs' notice to the Defendants here does precisely that. It lists with detailed specificity the exact portions of the permits and statutes allegedly violated and the exact date, location, and nature of each alleged violation. Colangelo Decl., Ex. RR at 570-83. The Court finds this notice adequate for the case to proceed against Defendants and will not reconsider the ruling in its June 20, 2008 Order.

**B. Neither Plaintiffs Nor Defendants Are Entitled to Summary Judgment on the Watershed Claims Because Genuine Issues of Material Fact Remain.**

The "Watershed Claims" encompass those claims that involve the rivers and creeks into which the MS4 flows (claims one through three and the Malibu Creek portion of claim four). With respect to these claims, Defendants do not dispute Plaintiffs' monitoring data.[7] Defendants argue, however, that because the monitoring stations are located downstream of where their own storm drains connect with the larger MS4, the discharges for which they are responsible will be commingled with those of other MS4 users. Defendants argue, therefore, that they cannot be found to be "causing or

---

[6]The court cited, discussed, and did not reject, much less overrule, the case that this Court cited in its June 20, 2008 Order, *Community Ass'n for Restoration of the Environment v. Henry Bosma Dairy*, 305 F.3d 943, 953 (9th Cir. 2002).

[7]Plaintiffs move for summary judgment only on the claims involving the Los Angeles River and San Gabriel River watersheds, and so the Court has been presented with data of permit exceedances only in these locations.

O

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

contributing" to the permit exceedances.[8]

The Permit clearly prohibits "discharges from the MS4 that cause or contribute to the violation of Water Quality Standards or water quality objectives." Permit, Burhenn Decl. Ex. 1, Part 2.1 at 23. The Permit designates the mass emissions monitoring stations as the locations where monitoring shall take place to "[d]etermine if the MS4 is contributing to exceedances of Water Quality Standards . . . ." *Id.* at T-6. Because the permit specifies that these stations are the proper monitoring locations to determine if the MS4 is contributing to exceedances, Defendants' argument that these locations cannot be the basis for determining whether there were exceedances fails.

Defendants also assert that because the monitoring stations are located downstream of where their own storm drains join these water bodies, the monitoring data cannot possibly pinpoint that their discharges—as opposed to those of the other entities using the

---

[8] As a preliminary matter, Defendants argue that in order for a permittee to be in violation of the permit, either the permittee or the Regional Board must have made a determination that the permittee is causing or contributing to exceedances of water quality standards, and the permittee must also fail to participate in good faith in the iterative process to remedy the exceedances. Opp'n at 17-19. A state court has already ruled on these arguments in Defendants' challenge to the validity of the Permit and found that, based on the regulatory history underlying the creation of the Permit, there is no safe harbor for a Permittee who complies with the iterative process. *In re Los Angeles County Municipal Storm Water Permit Litigation*, No. BS 080548, at 6-7 (Los Angeles Super. Ct. Mar. 24, 2005) (Colangelo Decl., Ex. D at 166-67). This Court agrees with that analysis. At the hearing, Defendants directed the Court's attention to a January 22, 2001 letter from the then-chair of the Regional Board, Francine Diamond, which the Superior Court cited in its opinion. *See* Gest Decl. Ex. D at 8-9. The Diamond letter suggests that as long as a Permittee is engaged in a good faith effort in the iterative process to remedy exceedances, it is in compliance with the Permit. However, as an informal mailing to Permittees, this letter does not have the force of law, and the Court need not defer to it, especially when it runs counter to the language of the Permit.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

MS4—caused the exceedances.[9] However, in order for the Permit to be violated, it is not necessary to pinpoint the source of pollutants. The Permittees, collectively, are violating the permit if "discharges from the MS4" are "caus[ing] or contribut[ing] to the violation of Water Quality Standards or water quality objectives." Permit Part 2.1 at 23; *see also In re Los Angeles County Municipal Storm Water Permit Litigation*, No. BS 080548, at 6 (Los Angeles Super. Ct. Mar. 24, 2005) (Colangelo Decl., Ex. D at 166) (explaining that subparts 2.1 and 2.2 of the Permit set forth the "basic receiving water requirements for Los Angeles area waters" and acknowledging that a permittee could be in "violation" of these requirements).

According to the Permit, monitoring at the mass emissions stations shall be used to determine if the MS4 is causing or contributing to exceedances. Permit at T-6. Here, Plaintiffs have alleged that water quality standards were exceeded at the monitoring stations on each of the four rivers (Los Angeles River, San Gabriel River, Santa Clara River, and Malibu Creek) on multiple occasions. FAC ¶¶ 79-229. Defendants have offered no facts to dispute these allegations. Moreover, Defendants have even acknowledged that their MS4 is conveying the specified pollutants to the water bodies in question. *See* Colangelo Decl., Ex. N at 291-93, 295, 298. Thus, Defendants are not entitled to judgment as a matter of law that they are in compliance with the Permit.

With respect to the Los Angeles River and San Gabriel River, Plaintiffs have moved for partial summary judgment as to liability for the District. Plaintiffs offer data showing the exceedances at the monitoring stations for these bodies of water. Plaintiff's SUF ¶¶ 33-37. In addition, Plaintiffs argue that because the mass emissions monitoring stations for these bodies of water are located in the portion of the MS4 owned and operated by the District, the District is responsible for the pollutants in the MS4 at this point. *See* Plaintiffs' SUF ¶ 24. The Court agrees with this proposition. As a Permittee,

---

[9]At the hearing, Defendants cited to numerous portions of the Permit and witness depositions and declarations that demonstrate that there were other sources of the pollutants at issue here. This is undoubtedly true, but irrelevant to liability under the Permit. "[D]ischarges from the MS4 that cause *or contribute* to the violation of Water Quality Standard . . . are prohibited." Permit Part 2.1 at 23. The MS4 or a particular Permittee need not be the sole source of the pollutant to be in violation of the Permit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

the District is "required to comply with the requirements of this Order applicable to discharges within its boundaries . . . ." Permit Part 3.E at 26; *see also* Part 3.D.8 at 25 (explaining that as Principal Permittee, the District must comply with the requirements of general Permittees, as well). However, that does not necessarily determine the question of whether the water passing by these points is a "discharge" within the meaning of the Permit and the Clean Water Act.

Indeed, Defendants argue that the water sampled at these monitoring stations does not constitute a discharge from the MS4, but merely reflects water passing by the stations. Defendants insist that no liability can attach to the District because it is merely allowing water to move within the same waterbody and, thus, no discharge occurs at the monitoring stations. The Act defines "discharge of a pollutant" to mean "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). A "point source" is "any discernible, confined and discrete conveyance, including . . . any pipe, ditch, channel, tunnel, conduit, . . . [or other examples], from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). A point source can include objects "that do not themselves generate pollutants." *South Florida Water Management District v. Miccosukee Tribe of Indians*, 541 U.S. 95, 105 (2004). In *Miccosukee*, the Supreme Court held that if two portions of a water body are part of the same water body, moving "water from one into the other cannot constitute an 'addition' of pollutants" so as to constitute a discharge under the Act. *Id.* at 109.[10] Plaintiffs have not provided the Court with the necessary evidence to establish that the Los Angeles River and the San Gabriel River below the mass emissions monitoring stations are bodies of water that are distinct from the MS4 above these monitoring stations. In other words, the record before the Court does not show where the MS4 ends and either River begins. In order for the District's actions to violate Part 2.1 of the Permit, it must be discharging pollutants from a point source. The Court has been presented with no evidence clearly establishing that

---

[10]At the hearing, Plaintiffs took issue with the Court's citation to *Miccosukee* since that case addressed whether a permit could be issued under the Clean Water Act, and a permit already regulates the MS4 here. However, the Court is not relying on *Miccosukee* to invalidate the Permit, but rather to clarify the meaning of the terms "discharge" and "point source" under the Clean Water Act, in order to help understand how those terms in the Permit should be interpreted .

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

the District is discharging pollutants from any given point source at or near the monitoring stations.

Plaintiffs pointed out during their oral argument that the District releases runoff through outlets that are *upstream* of the mass emissions stations on the San Gabriel and Los Angeles Rivers. Ex. UU to Second Colangelo Decl. at 283:4-17 (Pestrella D. Tr.). Outflow from these upstream outlets would be considered discharges under the Permit and the Clean Water Act. However, there is no data showing that any of these upstream discharges by the District are causing or contributing to the violations of the Water Quality Standards.

At the hearing, Plaintiffs also argued that exceedances at the mass emissions stations establish a violation of the Permit as a matter of law. They cited to 40 C.F.R. § 122.26(d)(ii)(3)(D), which requires a stormwater permit application to include

> A proposed monitoring program for representative data collection for the term of the permit that describes the location of outfalls or field screening points to be sampled (or the location of instream stations), why the location is representative, the frequency of sampling, parameters to be sampled, and a description of sampling equipment.

Plaintiffs assert that this regulation means that MS4 sampling need not be conducted at a point of discharge, but instead may be conducted at a "representative" location elsewhere, and that such a representative location may be used to determine the MS4's compliance with the Permit. *See* Permit at T-6 (stating that the monitoring from the mass emissions stations shall be used to "determine if the MS4 is contributing to exceedances of Water Quality Standards").

Where Plaintiff's argument runs into trouble, however, is the fact that although the mass emissions station data may be the appropriate way to determine whether the MS4 in its entirety is in compliance with the Permit or not, that data is not sufficient to enable the Court to determine that the District is responsible for "discharges from the MS4 that cause or contribute to the violation" of standards under Part 2.1 of the Permit, since a co-permittee is responsible "only for a *discharge* for which it is the operator." Permit ¶ G.4

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

at 20 (emphasis added). *See also* 40 C.F.R. § 122.26(b)(1) ("*Co-permittee* means a permittee to a NPDES permit that is only responsible for permit conditions relating to the discharge for which it is operator."). There is no evidence showing that *discharges* from the District portions of the MS4 are contributing to the exceedances at the mass emissions stations. Plaintiffs would need to present some evidence (monitoring data or an admission) that some amount of a standards-exceeding pollutant is being discharged through at least one District outlet.[11] They have not done so. Consequently, the Court cannot grant summary judgment for the Plaintiffs on any of the watershed claims.

In their Motion for Summary Judgment, Defendants do not assert that, as a factual matter, the runoff they are discharging from their MS4 outlets is devoid of the observed pollutants. They instead make the legal arguments that the Court has already rejected above—that the flow from their MS4 outlets does not constitute discharge, that the monitoring data cannot be used to establish Permit noncompliance, that the presence of other sources of the pollutants absolves them of responsibility, and that the Permit provides a "safe harbor" for Permittees that participate in the iterative process. If the Court had an evidentiary basis to find that the standards-exceeding pollutants did not pass through the Defendants' MS4 outflows at or near the time the exceedances were observed, then Defendants could be entitled to summary judgment on these claims. However, neither side has introduced evidence of whether the standards-exceeding pollutants passed through the Defendants' outflows.

The Court therefore ORDERS each side to specify whether there is any basis in the record or in other facts currently in their possession establishing that the standards-exceeding pollutants identified at page 4 passed through the Defendants' MS4 outflows at or near the time the exceedances were observed. In addition, both sides must disclose whether any facts in the record or already in their possession support a finding that Water Quality Standards were exceeded at the monitoring stations in Santa Clara River and

---

[11]In support of their position, Plaintiffs invoke the specter of being forced to sample every single outflow in Los Angeles County, which would be impossible. This ruling would not require that result. It would require sampling from at least one outflow that included a standards-exceeding pollutant, in order to show that a discharge from a particular permittee is contributing to an exceedance downstream.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

Malibu Creek. Each side's response to these inquiries must not exceed five pages and must be filed by March 10, 2010. No response to the other side's filing will be permitted.

### C. Plaintiffs Are Entitled to Summary Judgment on the Surfrider Beach Claim.

The Permit prohibits discharges from the MS4 that cause or contribute to violations of bacterial limits during the dry summer months at beaches in the Santa Monica Bay, including at a designated monitoring location at Surfrider Beach. Permit at 17, 22 (Part 1.B), 24 n.4, 24 (Part 2.5), & Att. U-2. Defendants do not dispute that exceedances of bacterial limits at Surfrider Beach have occurred dozens of times in the summer months since 2006. Defendants also do not dispute that the Regional Board has expressly identified MS4 discharges as one of the sources of fecal bacteria at the beach, in Notices of Violations that it issued to the County and the Flood District in March 2008. Plaintiffs' SUF ¶¶ 26-28, 31-32.

Defendants make two arguments that they are not liable for the exceedances at Surfrider Beach. First, they argue that because there are many other potential sources of bacteria at Surfrider Beach, the exceedances cannot be attributed to them. However, the existence of other potential sources is irrelevant to determining whether there has been a violation under the Permit. With respect to Surfrider Beach, the Permit specifies that all permittees are "jointly responsible for compliance" with the requirements prohibiting discharges that cause or contribute to bacterial exceedances. Permit at 22 n.3. Thus, Defendants are liable for the exceedances so long as they contributed to them.

Defendants next argue that there is no evidence that they contribute to the exceedances at Surfrider Beach, in part because none of their storm drains discharge directly to Surfrider Beach. Nowhere does the Permit require that a permitee discharge directly to a monitoring site to "cause or contribute" to exceedances in violation of the Permit. *See* Permit at 17, 22 (Part 1.B), 24 n.4, 24 (Part 2.5), & Att. U-2. Indeed, the shoreline monitoring at Surfrider Beach itself is dispositive evidence of Permit violations. Permit at 16-17 (¶ 36). The Permit specifies that if bacterial limits are exceeded at a compliance monitoring site, the Regional Board will issue an appropriate investigative order. Only if the Regional Board thereafter determines that a permittee is not

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

responsible for the exceedances will the permittee be absolved of responsibility. Permit at 17-18 (¶¶ 37-38). Here, the Regional Board has issued Notices of Violation to the County and the District (and the other entities that discharge to the MS4) indicating that the discharges from the MS4 are causing or contributing to bacterial exceedances at Surfrider Beach. Colangelo Decl. Exs. G & H. As Defendants conceded at oral argument, the Regional Board has not yet made a finding that discharges from the MS4 are not contributing to the documented bacterial violations at Surfrider Beach. *See* Plaintiff's SUF ¶ 29. Thus, until the Regional Board decides otherwise, the Defendants are jointly responsible (along with the other permitees) for the bacterial exceedances at Surfrider Beach. Consequently, summary judgment as to liability for the Plaintiffs on this claim is warranted.

### D. Plaintiffs Are Entitled to Summary Judgment on Their Claim of Illegal Discharge into the ASBS.

Defendants make two arguments for why they should not be held liable for discharging waste into the protected coastal Malibu ASBS. First, they assert that the prohibition on waste discharge has not properly been incorporated into the Permit and so Plaintiffs cannot enforce it under the citizen suit provision of the Clean Water Act. Next, they argue that even if the prohibition is considered part of the Permit, Defendants cannot be held liable for its violation because they are awaiting the outcome of their application for an exemption from the prohibition from the State Water Resources Control Board ("State Board").

#### 1. Incorporation of the ASBS discharge prohibition into the Permit

Contrary to Defendants' arguments, the prohibition on discharging waste into the ASBS is incorporated into the Permit. The Permit prohibits "discharges from the MS4 that cause or contribute to the violation of Water Quality Standards or water quality objectives." Permit at 23. The Permit defines "water quality standard" to include "water quality criteria contained in . . . the California Ocean Plan . . . ." Permit at 70. The California Ocean Plan ("Ocean Plan"), in turn, prohibits the discharge of waste (defined as "a discharger's total discharge, of whatever origin") into any ASBS. Colangelo Decl. Ex. C at 150, 154.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

Defendants argue that this prohibition of discharge of waste is not a "water quality standard" because it is located in Part III of the Ocean Plan—the program of implementation—rather than in Part I or Part II—the beneficial uses and water quality criteria sections. However, the State Board found, in a precedential order issued before the current Permit was adopted, that the "Ocean Plan discharge is a water quality standard" that is enforceable in an NPDES Permit. *In re California Department of Transporation*, Order WQ 2001-08 at 8-9 (Apr. 26, 2001) (Colangelo Decl. Ex. I at 243-44). Because this was a precedential order, the Regional Board was bound to follow it when issuing the Permit, and therefore, the prohibition on waste discharge in an ASBS is a water quality standard for purposes of the Permit. *See* State Board Order WR 96-01 at 17 n.11 (Jan. 18, 1996) (designating all water quality decisions and orders as precedential decisions) (Second Colangelo Decl. Ex. XX at 45); Cal. Gov. Code § 11425.60 (authorizing precedential decisions by state agencies).

Moreover, this decision by the State Board, that the Ocean Plan's prohibition on the discharge of waste is a water quality standard, is supported by the Clean Water Act's regulations. The regulations specify, "Water quality standards are provisions of State or Federal law which consist of a designated use or uses for the waters of the United States and water quality criteria for such waters based upon such uses." 40 C.F.R. § 131.3(i). Water quality criteria are, in turn, defined as "elements of State water quality standards, expressed as constituent concentrations, levels, or narrative statements, representing a quality of water that supports a particular use." 40 C.F.R. § 131.3(b). The prohibition on the discharge of waste into an ASBS is a classic example of the type of narrative statement that would qualify as a water quality criterion under this definition. *See, e.g.*, *PUD No. 1 of Jefferson County v. Washington Dept. of Ecology*, 511 U.S. 700, 715 (1994) ("'[C]riteria' are often expressed in broad, narrative terms, such as 'there shall be no discharge of toxic pollutants in toxic amounts.'" (citation omitted)).

Based on this analysis, the Ocean Plan's prohibition on discharge into an ASBS is a water quality standard that is covered by the Permit's prohibition on "discharges from the MS4 that cause or contribute to the violation of Water Quality Standards or water quality objectives." Permit at 23.

### 2. Defendants' exemption application

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

Defendants also argue that they need not comply with the prohibition on discharging waste in the ASBS because they have applied for an exception from that prohibition with the State Board and their application is still pending. Opp'n at 23-24. This Court has already ruled on this issue in its June 20, 2008 Order on Defendants' motion to dismiss. In that Order, the Court found that the "State Water Resources Control Board has explicitly stated that the provisions of the 'Ocean plan' remain fully enforceable while it reviews the administrative applications on which Defendants rely." Order at 2. Defendants' attempt to relitigate this issue is improper.

Moreover, the cases which Defendants rely upon are inapposite, as they involve situations where no permit had yet been issued to regulate the defendant's discharge, not a situation like this one, where a valid permit limits the defendants' discharge, but an application for an exception is pending. *See Hughey v. JMS Development Corp.*, 78 F.3d 1523 (11th Cir. 1996); *Mississippi River Revival v. City of Minneapolis*, 319 F.3d 1013 (8th Cir. 2003). The Defendants will not be permitted to avoid responsibility for their conduct currently regulated under the Permit, simply because a discretionary exception application is still pending with the State Board.

### E. Defendants Are Entitled to Summary Judgment as to Part of the Compliance Reports Claim.

Defendants assert that they are not required to submit Receiving Water Limitations ("RWL") Compliance Reports under the Permit until and unless the Permittee or the Regional Board determines that MS4 discharges are causing or contributing to an exceedance of an applicable water quality standard. The Court agrees. The Permit clearly states, "Upon a determination by either the Permittee or the Regional Board that discharges are causing or contributing to an exceedance of an applicable Water Quality Standard, the Permittee shall promptly notify and thereafter submit a [RWL Compliance Report] to the Regional Board . . . ." Permit Part 2.3.a, at 23. In order for a Permittee to be required to submit RWL Reports, either the Permittee or the Regional Board must determine that discharges from the MS4 are causing or contributing to exceedances of a Water Quality Standard.

At oral argument, Plaintiffs directed the Court's attention to another provision of

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

the Permit, which states (with respect to the Principal Permittee—the District), "When *data indicate* that discharges are causing or contributing to exceedances of applicable Water Quality Standards . . . a RWL Compliance Report . . . shall be submitted with the subsequent Unified Annual Report." Permit ¶ I.C.6 at T-4 (emphasis added). Plaintiffs would have the Court read this language to find that anytime the monitoring data at the mass emissions stations exceeds water quality limits, an RWL Report is automatically required. However, as the Court found in Part IV.B of this Order, discussing the Watershed claims, data showing exceedances at the mass emissions stations does not necessarily show that *discharges* from the MS4 are causing or contributing to those exceedances, because the Court has been presented with no evidence establishing that standards-exceeding pollutants are passing through an outflow of either Defendant. Thus, even though Plaintiffs have presented evidence of exceedances at the monitoring stations since 2003, Fernandez Decl., Exs. A-G, this monitoring data did not automatically invoke the RWL requirements. Because neither the Regional Board nor the Defendants has formally determined that the MS4 is causing or contributing to exceedances of water quality standards in the four watersheds, Defendants are not required to submit RWL reports with respect to these water bodies. Thus, the Court grants summary judgment to Defendants with respect to the claim of inadequate Compliance Reports for the rivers and creeks.

In contrast, the Regional Board has made a determination, and notified Defendants through formal Notices of Violation, that the MS4 is causing or contributing to exceedances of bacterial limits at Santa Monica Bay beaches, including Surfrider Beach. Colangelo Decl., Exs. G & H. These Notices of Violation were sent to Defendants on March 4, 2008, so they were required to submit RWL Compliance Reports addressing the violations at Surfrider Beach beginning on this date. Defendants have each submitted one RWL Compliance Report since receiving a Notice of Violation—their 2008 Compliance Reports. Colangelo Decl. Exs. NN & OO. These Reports do address the bacterial exceedances in Santa Monica Bay, but there is a genuine issue of material fact as to whether their discussion of the proposed changes to the monitoring program is adequate to meet the requirements of the Permit. SGI ¶ 62. Thus, the Court cannot grant either Defendants or Plaintiffs summary judgment as to the adequacy of the 2008 Compliance Reports.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1467 AHM (PLAx) | Date | March 2, 2010 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.* v. COUNTY OF LOS ANGELES, *et al.* | | |

## V.     CONCLUSION

For the foregoing reasons, the Court DENIES summary adjudication for the Plaintiffs as to the Watershed Claims (claims one, two, three, and the Malibu Creek portion of claim four). The Court reserves its ruling on the Defendants' Motion for Summary Judgment on the Watershed Claims pending the receipt of the briefing requested in Part IV.B of this Order. The Court GRANTS summary adjudication for the Plaintiffs on claim five and on the Surfrider Beach portion of claim four. The Court GRANTS summary adjudication for the Defendants on all portions of claim six except for the adequacy of the 2008 Compliance Reports' treatment of Surfrider Beach. The Court DENIES summary adjudication for both parties as to the adequacy of the 2008 Compliance Reports' treatment of Surfrider Beach.

|  | : |  |
|---|---|---|
| Initials of Preparer | | SMO |