LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 08-01467 BRO (PLAx)** | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | **NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL.** | | | |

Present: The Honorable   **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**       (IN CHAMBERS)

**ORDER RE: MOTION FOR PARTIAL SUMMARY JUDGMENT [389];**
**MOTION TO DISMISS [394]; AND MOTION FOR RECONSIDERATION [399]**

## I.    INTRODUCTION

This case is now in its seventh year of litigation.  The parties have made several trips to the Ninth Circuit Court of Appeals and even received an opinion by the United States Supreme Court.[1]  Following the Supreme Court's decision, the Ninth Circuit issued a mandate to this Court, holding that Defendants—the County of Los Angeles and the Los Angeles County Flood Control District—were liable as a matter of law for violating the terms of their National Pollutant Discharge Elimination System permit.[2] Currently pending before the Court are three motions.  First, Defendants now move for reconsideration of the Court's March 2, 2010 order granting partial summary judgment pursuant to Local Rule 7-18.  (Dkt. No. 399.)  Second, Defendants have also filed a motion to dismiss Plaintiffs the Natural Resources Defense Council and Santa Monica Baykeeper's second, third, and fifth claims for relief.  (Dkt. No. 394.)  And third, Plaintiffs have moved for partial summary judgment on issues discussed in the Ninth Circuit's mandate.  (Dkt. No. 389.)  After consideration of the papers filed in support of and in opposition to each of these motions, and after hearing oral argument of counsel, the Court hereby **DENIES** Defendants' motion for reconsideration, **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss, and **GRANTS in part** and **DENIES in part** Plaintiffs' motion for partial summary judgment.

---

[1] *See L.A. Cnty. Flood Control Dist. v. Natural Res. Def. Council, Inc.*, 133 S. Ct. 23 (2013).

[2] *See Natural Res. Def. Council, Inc. v. Cnty. of L.A.*, 725 F.3d 1194, 1210 (9th Cir. 2013).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | | |

## II.    BACKGROUND

### A. Factual Background

On March 3, 2008, Plaintiffs the Natural Resources Defense Council and Santa Monica Baykeeper filed suit against Defendants the County of Los Angeles (the "County"), the Los Angeles Flood Control District (the "District"), and the individual County Supervisors and the Director of the Los Angeles County Department of Public Works in their official capacities, alleging that the County and the District violated several provisions in the National Pollutant Discharge Elimination System ("NPDES") Permit regulating municipal stormwater and urban runoff discharges within the County of Los Angeles (the "Permit").[3]

The municipal separate storm sewer system ("MS4") in the Los Angeles County basin carries urban runoff from local storm drains to inland rivers and eventually to ocean waters.  No treatment plant cleans the runoff before it enters the so-called receiving waters of the region, so the runoff can contain a number of untreated pollutants it acquires as it flows over streets, parking lots, commercial sites, and residential areas.  The MS4 is a complicated web, with thousands of miles of storm drains, hundreds of miles of open channels, and hundreds of thousands of connections.  The MS4 includes storm drains operated by—and runoff coming from—eighty-four incorporated cities, in addition to those from the County and District.  The District owns, operates, and maintains approximately 500 miles of open channel and 2800 miles of storm drains, an area which comprises more of the MS4 than all eighty-four co-permittee cities combined.  The County owns and operates additional storm drains, separate from the District, that connect to the MS4.  The County has no central record of these storm drains and does not know their complete extent.

The Regional Water Quality Control Board ("Regional Board"), an entity of the State of California, issued collectively to the County, the District, and these eighty-four cities a NPDES Permit required under the Clean Water Act.  This Permit allows the Permittees to discharge stormwater runoff from the MS4, contingent on meeting a

---

[3] The Court's summary of this dispute derives from the discussion of the undisputed facts in the Court's prior summary judgment order.  (*See* Dkt. No. 280 at 1–5.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 08-01467 BRO (PLAx)** | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | **NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL.** | | | |

number of conditions. Most notably, Part 2.1 of the Permit provides that "discharges from the MS4 that cause or contribute to the violation of Water Quality Standards or water quality objectives are prohibited." The Permit incorporates water quality standards from the Los Angeles Region Basin Plan for the Coastal Watersheds of Los Angeles and Ventura Counties (the "Basin Plan") and the California Ocean Plan (the "Ocean Plan"). *See* Cal. Water Code §§ 13170.2, 13240.

The Permit sets forth a monitoring program, which includes a requirement for the Principal Permittee (the District) to monitor the runoff flowing past seven specific mass emissions stations. These mass emissions stations include the Malibu Creek, the Los Angeles River, the San Gabriel River, and the Santa Clara River monitoring stations at issue in this case. The Los Angeles and San Gabriel Rivers mass emissions monitoring stations are located within the portion of the MS4 owned and operated by the District. Monitoring data from the Los Angeles River and San Gabriel River mass emissions stations indicate that water quality standards have repeatedly been exceeded for a number of pollutants, including aluminum, copper, cyanide, fecal coliform bacteria, and zinc.[4]

The Permit's monitoring program also includes a requirement that water quality samples be taken five times per week at Surfrider Beach, a beach within the Santa Monica Bay. This monitoring shows that the water at Surfrider Beach has exceeded bacterial limits (including limits on total coliform, fecal coliform, and enterococcus) on dozens of occasions during summer dry weather seasons. The Regional Board has issued Notices of Violation to the County and the District (and the eighty-four cities that discharge to the MS4) indicating that discharges from the MS4 are causing or contributing to bacterial exceedances at Surfrider Beach.

The California Ocean Plan prohibits the discharge of waste into the Malibu Area of Special Biological Significance ("ASBS"), which covers the four-mile coastline from Latigo Point in Malibu to Laguna Point in Ventura. Plaintiffs assert, and this Court found in its prior order, that this prohibition has been incorporated into the Permit. The District and the County own and operate drains (at least thirteen District drains and eight County drains) that discharge to the Malibu ASBS. County sampling of eleven of these drains in

---

[4] At summary judgment, neither party provided the Court with monitoring data from the other mass emissions monitoring stations.

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

2004 indicated that every single wet-weather event (rainstorm) sampled had discharges exceeding bacteria limits.  Sampling data collected by the Santa Monica Baykeeper covering at least 2004 to 2006 show numerous instances of discharge from these drains exceeding applicable water quality standards.

The Permit also requires Permittees to submit to the Regional Board annual Receiving Water Limitations Compliance Reports describing the Permittee's plan to remedy violations of the Permit "[u]pon a determination by either the Permittee or the Regional Board that discharges are causing or contributing to an exceedance of an applicable Water Quality Standard."  Defendants did not submit any Compliance Reports in 2003, 2004, or 2005.  Defendants submitted Compliance Reports in 2006, 2007, and 2008, but the parties have disagreed as to whether these Reports satisfied the requirements under the Permit.

### B. Procedural Background

In their First Amended Complaint, which remains the operative complaint in this matter, Plaintiffs allege six causes of action under the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, for: (1) causing and contributing to exceedances of water quality standards in the Santa Clara River watershed; (2) causing and contributing to exceedances of water quality standards in the Los Angeles River watershed; (3) causing and contributing to exceedances of water quality standards in the San Gabriel River watershed; (4) causing and contributing to exceedances of water quality standards and Total Maximum Daily Load ("TMDL") violations in the Malibu Creek watershed and at Surfrider Beach; (5) illegally discharging waste into the oceanic ASBS between Mugu Lagoon in Ventura County and Latigo Point in Los Angeles County; and (6) failing to submit adequate Receiving Water Limitations Compliance Reports.  (Dkt. No. 55.)

On September 8, 2009, Plaintiffs moved for partial summary judgment regarding liability as to claims two and three (as to the District); as to the Surfrider Beach violations in claim four; and as to all of claims five and six.  (Dkt. No. 87.)  On September 14, 2009, Defendants filed their motion for summary judgment as to all counts.  (Dkt. No. 113.) On March 2, 2010, the Court granted in part and denied in part each of these motions. (Dkt. No. 280.)  Specifically, the Court denied summary judgment for both parties as to the watershed claims (claims one, two, three, and the Malibu Creek portion of claim

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

four); the Court granted summary judgment to Plaintiffs on claim five and on the Surfrider Beach portion of claim four; the Court granted summary judgment to Defendants on all portions of claim six except for the adequacy of the 2008 Compliance Reports' treatment of Surfrider Beach; and the Court denied summary judgment to both parties as to the adequacy of the 2008 Compliance Reports' treatment of Surfrider Beach. (Dkt. No. 280.) The Court then entered final judgment on the watershed claims pursuant to Federal Rule of Civil Procedure 54(b), (Dkt. No. 307), and Plaintiffs appealed this judgment to the Ninth Circuit, (Dkt. No. 315).

On March 10, 2011, the Ninth Circuit affirmed the district court's grant of partial summary judgment in Defendants' favor.[5] Several months later on July 13, 2011, the Ninth Circuit withdrew this opinion upon denial of rehearing en banc, and this time affirmed in part and reversed in part the Court's partial summary judgment order.[6] The Supreme Court granted certiorari to determine "a single question: Under the Clean Water Act, does the flow of water out of a concrete channel within a river rank as a 'discharge of a pollutant'?" *L.A. Cnty. Flood Control Dist.*, 133 S. Ct. at 711. Finding the answer to be "no," the Supreme Court reversed the Ninth Circuit's ruling and remanded the case for further proceedings. *Id.* at 713–14. On remand, the Ninth Circuit reversed the district court's March 2, 2010 summary judgment order, finding as a matter of law that Defendants were liable for violating the terms of the Permit on the basis that the results of their pollution monitoring conclusively demonstrated that pollution levels in the Los Angeles and San Gabriel Rivers were in excess of those allowed under the Permit. *Natural Res. Def. Council*, 725 F.3d at 1210. The court then issued a mandate to this Court on May 5, 2014 to conduct further proceedings consistent with that opinion, "including a determination of the appropriate *remedy* for . . . Defendants' violations." *Id.* (Dkt. No. 371 at 33–34.)

On May 13, 2014, the case was reassigned from the Honorable A. Howard Matz to this Court. (Dkt. No. 372.) Plaintiffs then filed the instant motion for partial summary judgment on January 14, 2015. (Dkt. No. 389.) Defendants opposed this motion on February 23, 2015, (Dkt. No. 412), and Plaintiffs replied on March 9, 2015, (Dkt. No. 420). Defendants also filed their motion to dismiss and motion for reconsideration on

---

[5] *Natural Res. Def. Council, Inc. v. Cnty. of L.A.*, 636 F.3d 1235 (9th Cir. 2011).

[6] *Natural Res. Def. Council, Inc. v. Cnty. of L.A.*, 673 F.3d 880 (9th Cir. 2011).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | | |

January 14, 2015.  (Dkt. Nos. 394, 399.)  Plaintiff opposed each of these motions on February 23, 2015, (Dkt. Nos. 408, 410), and Defendants replied on March 9, 2015, (Dkt. Nos. 422, 425).  The Court then heard oral argument on March 23, 2015.

## III.   LEGAL STANDARD

### A. Motion for Reconsideration

A party may move for reconsideration pursuant to the Local Rules.  Under Local Rule 7-18, a motion for reconsideration must be founded upon one of three bases: (1) "a material difference in fact or law from that initially presented to the Court" of which the party could not have learned by exercising reasonable diligence prior to the Court's order; (2) "the emergence of new material facts or a change of law occurring after the time" of the Court's order; or (3) "a manifest showing of a failure to consider material facts presented to the Court before such decision."  C.D. Cal. L.R. 7-18.  A court's local rules have the force and effect of law, so long as they are not inconsistent with statute or the Federal Rules.  *See Atchison, Topeka & Santa Fe R.R. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998).  A court should not depart from its local rules unless the effect on the substantial rights of the parties would be "so slight and unimportant that the sensible treatment is to overlook [it]."  *Prof'l Programs Grp. v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994) (internal quotation marks omitted).

### B. Motion to Dismiss

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief.  *Id.*

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## C. Motion for Summary Judgment

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A disputed fact is material where its resolution might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party.  *Id.*  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The moving party may satisfy that burden by showing "that there is an absence of evidence to support the non-moving party's case."  *Id.* at 325.

Once the moving party has met its burden, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the non-moving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial.  *Id.* at 587.  Only genuine disputes over facts that might affect the outcome of the lawsuit will properly preclude the entry of summary judgment.  *Anderson*, 477 U.S. at 248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (holding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor).  A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative.  *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

A court may consider the pleadings, discovery, and disclosure materials, as well as any affidavits on file.  Fed. R. Civ. P. 56(c)(2).  Where the moving party's version of events differs from the non-moving party's version, a court must view the facts and draw

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Although a court may rely on materials in the record that neither party cited, it need only consider cited materials. Fed. R. Civ. P. 56(c)(3). Therefore, a court may properly rely on the non-moving party to identify specifically the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Finally, the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

## IV.    DISCUSSION

The Court has three motions to resolve, two from Defendants and one from Plaintiffs. Because Defendants' motions—which request reconsideration of the Court's prior partial summary judgment order in addition to dismissal of several of Plaintiffs' claims—impact the Court's analysis on Plaintiffs' motion, the Court will address Defendants' motions first before turning to Plaintiffs' motion.

### A. Motion for Reconsideration

To begin, Defendants argue that, pursuant to Local Rule 7-18, the Court should reconsider the order issued by Judge Matz granting Plaintiffs partial summary judgment on their fifth claim of relief because new evidence and developments reflect material changes in both fact and law.[7] (*See* Dkt. No. 400.) Specifically, Defendants argue that

---

[7] "The authority of a district judge to reconsider a previous ruling in the same litigation, whether a ruling made by him *or by a district judge previously presiding in the case*, including (because the case has been transferred) a judge of a different court, is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of,

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

the Court's finding on this issue rested on its determination that a provision in the California Ocean Plan prohibiting the discharge of waste to ASBSs (the "ASBS discharge prohibition") is a "water quality standard" within the meaning of Part 2.1 of the Permit, and that new evidence they have discovered undercuts this determination. This new evidence is comprised of the following three documents:

- A 2012 resolution of the California State Water Resources Control Board (the "State Board") authorizing an "exception" to the ASBS discharge prohibition, as well as the resolution's accompanying Programmatic Environmental Impact Report ("EIR"), the latter of which comprises "Revised Responses to Comments" prepared by State Board staff and includes a statement indicating that the ASBS discharge prohibition "is not a water quality standard," (Dkt. No. 401 at 14);

- An October 7, 2004 letter from the United States Environmental Protection Agency ("EPA") to the Executive Director of the State Board, opining that the EPA "believe[s] that the prohibition against discharges of waste into any ASBS . . . is neither a water quality standard nor a policy generally affecting the application and implementation of a water quality standard," (Dkt. No. 402 at 5); and

- A July 8, 2009 letter from the Chief Deputy Director of the State Board to the EPA referencing the 2004 letter from the EPA and stating that "[t]he [ASBS discharge] prohibition is an implementation tool that is intended to prevent undesirable alterations of natural water quality, rather than a water quality standard," (Dkt. No. 402 at 9).

According to Defendants, these documents, which were unknown (in the case of the 2004 and 2009 letters) or unknowable (in the case of the 2012 exception) to Defendants at the time of the Court's prior March 2010 order, disprove the Court's conclusion that the ASBS discharge prohibition is a water quality standard.

---

law that makes clear that the earlier ruling was erroneous." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571–72 (7th Cir. 2006) (emphasis added).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | | |

Even a cursory review of these documents demonstrates a conflicting view on this issue. As Defendants argue, the Court's prior holding relied in large part on its conclusion that "the Ocean Plan's prohibition on discharge into an ASBS *is a water quality standard* that is covered by the Permit's prohibition on 'discharges from the MS4 that cause or contribute to the violation of the Water Quality Standards or water quality objectives.'" (Dkt. No. 280 at 16 (emphasis added).) The documents presented here by Defendants illustrate that the authors of the 2004 and 2009 letters—the Director of the Water Division of the EPA and the Chief Deputy Director of the State Board, respectively—in addition to the State Board staff who prepared the comments in the 2012 resolution's EIR, disagree with the Court's conclusion. Despite Defendants' arguments to the contrary, however, the views expressed in these documents are not determinative.

As noted in the Court's prior order granting Plaintiffs partial summary judgment on this issue, the State Board issued a precedential order shortly before the Permit was issued in 2001.[8] (Dkt. No. 280 at 16 (citing *In re Cal. Dep't of Transp.*, Order No. WQ 2001-08, 2001 WL 36247991 (Cal. St. Wat. Res. Bd. Apr. 26, 2001) [hereinafter *Caltrans*]).) In this order, the State Board stated unequivocally that "[t]he Ocean Plan discharge prohibition is a water quality standard." *Caltrans*, 2001 WL 36247991, at *5. Thus, as this Court explained, "[b]ecause this was a precedential order, the Regional Board was bound to follow it when issuing the Permit, and therefore, the prohibition on waste discharge in an ASBS is a water quality standard *for purposes of the Permit*." (Dkt. No. 280 at 16 (emphasis added).) As the italicized portion of this quote illustrates, the Court was focused not on determining in a vacuum whether the ASBS discharge prohibition constitutes a water quality standard, but rather on determining whether it was a water quality standard as defined in the Permit itself.

---

[8] *See Matter of Fishery Prot. & Water Right Issues of Lagunitas Creek*, Order No. WR 96-1, 1996 WL 82542, at *12 (Cal. St. Wat. Res. Bd. Jan. 18, 1996) (designating "all decisions or orders adopted by the [State Water Resources Control Board] at a public meeting to be precedent decisions, except to the extent that a decision or order indicates otherwise, or is superseded by later enacted statutes, judicial opinions, or actions of the [State Water Resources Control Board]"); *see also* Cal. Gov't Code § 11425.60 ("An agency may designate as a precedent decision a decision or part of a decision that contains a significant legal or policy determination of general application that is likely to recur.").

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 08-01467 BRO (PLAx)** | Date | March 30, 2015 |
|---|---|---|---|
| Title | **NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL.** | | |

Defendants assert that the issue in this motion is limited to whether the ASBS discharge prohibition actually constitutes a water quality standard. (*See, e.g.*, Reply at 1.) For example, Defendants argue in reply that Plaintiffs "miss the point" by arguing in opposition that the 2012 Resolution and the 2004 and 2009 letters do not overrule *Caltrans*. (Reply at 6.) The point, Defendants contend, is that these newly discovered documents demonstrate that the language in *Caltrans* indicating that the discharge prohibition was a water quality standard was actually only dicta and thus should not have been followed by the Court in its prior order. Yet the Court's analysis in determining *what the Permit allowed* focused on how the Permit's language should be interpreted based on the law as it existed at the time the Permit was issued. And as the Court reasoned in its prior order, the Regional Board was bound to follow the precedential order of *Caltrans* when it issued the Permit in 2001. Defendants' argument that this new evidence demonstrates that the relevant language from *Caltrans* was dicta is flawed for obvious reasons: opinions and resolutions from 2004, 2009, and 2012 could not have informed the Regional Board's interpretation of *Caltrans* in 2001 when it issued the Permit. So even if the Court were to accept Defendants' position that these later documents prove that the *Caltrans* language is dicta, it does not change the Court's prior determination that "the prohibition on waste discharge in an ASBS is a water quality standard *for purposes of the Permit*." (Dkt. No. 280 at 16 (emphasis added).)

Defendants' next argument—which they raise for the first time in their reply to this motion— is that a water quality standard cannot be effective until the EPA has reviewed and approved it. In support of this argument, Defendants cite to *Alaska Clean Water Alliance v. Clarke*, No. C96-1762R, 1997 WL 446499, at *3 (W.D. Wash. July 8, 1997), in which a Washington district court found that a "water quality standard" cannot be effective until it has been approved by the EPA. The court there analyzed the section of the Clean Water Act that governed water quality standards (section 303) and determined that "the language of 303(c)(3) clearly and unambiguously states that 'if' EPA approves state standards, they shall 'thereafter' be the applicable standards," and that, consequently, "Congress did not intend new or revised state standards to be effective until after EPA had reviewed and approved them." *Id.* For similar reasons to those discussed above, however, this argument also fails. That is, even assuming the Regional Board had read this unpublished opinion by an out-of-state federal district court, its interpretation of section 303 implicitly conflicted with that of *Caltrans*, which was

**CIVIL MINUTES – GENERAL**

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

binding on the Regional Board.  Thus, presented with the conflicting interpretations of this provision presented in *Alaska Clean Water Alliance* and *Caltrans*, the Regional Board was required to adopt the view in *Caltrans*.

Alternative grounds exist to deny this motion for reconsideration.  As Plaintiffs argue, "[m]otions for reconsideration should not be freely granted," *Bloch v. Prudential Ins. Co. of Am.*, No. CV05-1589-DT(MCX), 2005 WL 6141292, at *3 (C.D. Cal. Aug. 9, 2005); indeed, they are typically granted "only in rare circumstances," *Collins v. D.R. Horton, Inc.*, 252 F. Supp. 2d 936, 938 (D. Ariz. 2003).  Moreover, "[a]lthough Local Rule [7-18] does not specify a time period within which a party may seek reconsideration, the Court interprets this Rule as providing for a reasonable time within which to seek reconsideration."  *Meredith v. Erath*, No. 99CV13100, 2001 WL 1729626, at *1 (C.D. Cal. Sept. 19, 2001); *accord Selectron Indus. Co. v. Selectron Int'l*, No. CV04-4146-PLA, 2007 WL 5193735, at *3 (C.D. Cal. Sept. 25, 2007) ("Although Local Rule 7-18 does not expressly set a time frame in which to file a motion under that provision, 'the rule has been read to provide for a reasonable time within which to seek reconsideration.'" (internal quotation marks and modification omitted) (quoting *United States v. Comprehensive Drug Testing, Inc.*, 473 F.3d 915, 928–29 (9th Cir. 2006))); *Mut. Life Ins. Co. of N.Y. v. Pointe Tapatio Resort Props. No. 1 Ltd. P'ship*, 206 F.R.D. 495, 497 (D. Ariz. 2002) ("Absent a Local Rule on the timeliness of filing a motion for reconsideration, Courts apply the reasonable-time standard set forth in Rule 60(b).").

Here, Defendants contend that they could not reasonably have discovered these documents prior to the March 2010 summary judgment order, and that they did not learn of the existence of the 2004 and 2009 letters until October 2011.  (Mot. at 12; Burhenn Decl. ¶¶ 4, 6.)  Even assuming this is true, however, Defendants still waited three years and three months (from October 2011 to January 2015) to file this motion based on this "newly discovered" evidence.[9]  Courts have routinely rejected motions for reconsideration brought such a long time after discovery of new facts. *See, e.g.*, *Selectron Indus.*, 2007 WL 5193735, at *3 (finding four months to be too long a delay);

---

[9] The case was stayed during part of this time.  (*See, e.g.*, Dkt. No. 347.)  As Plaintiffs argue, however, Defendants could have moved to lift the stay to file this motion for reconsideration, a tactic they employed successfully in seeking partial summary judgment on Plaintiffs' claims in January 2011.  (*See* Dkt. Nos. 324, 345.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 08-01467 BRO (PLAx)** | Date | March 30, 2015 |
|---|---|---|---|
| Title | **NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL.** | | |

*Mut. Life Ins. Co. of N.Y.*, 206 F.R.D. at 498 (finding twenty months to be too long); *Meredith*, 2001 WL 1729626, at *1 ("Eleven months is not reasonable.").[10]  Defendants argue that this delay caused Plaintiffs no prejudice, but prejudice is not the standard. Rather, Defendants must file a motion for reconsideration within a reasonable time. Defendants have failed to provide an adequate explanation as to how waiting over three years was reasonable here.  As a result, the Court finds that Defendants' motion for reconsideration should be denied for lack of timeliness as well.[11]

## B. Motion to Dismiss

The next motion before the Court is Defendants' motion to dismiss Plaintiffs' second, third, and fifth claims for relief or, in the alternative, to strike Plaintiffs' prayer for injunctive relief.  (Dkt. No. 394.)  In their motion, Defendants contend that Plaintiffs' second, third, and fifth claims for injunctive relief have been rendered moot by a new municipal stormwater permit issued by the Regional Board in 2012 and a resolution providing an exception to Defendants from the prohibition against waste discharges into ASBSs.  Defendants further claim that these developments render Plaintiffs' prayer for civil penalties moot as well.

### 1. Plaintiffs' Claims for Injunctive Relief Are Now Moot

To begin, Plaintiffs' remaining claims allege that Defendants caused or contributed to exceedances of water quality standards in the Los Angeles and San Gabriel Rivers in violation of 33 U.S.C. §§ 1311(a), 1342(p).  On appeal, the Ninth Circuit found Defendants liable on these claims "[b]ecause the results of County Defendants' pollution monitoring conclusively demonstrate[d] that pollution levels in the Los Angeles and San

---

[10] *See also Dais v. Lane Bryant, Inc.*, 203 F.R.D. 115, 117 (S.D.N.Y. 2001) (finding a year and a half to be too long); *Sec. Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1068 (10th Cir. 1980) (sustaining denial of Rule 60 relief where the moving party did not file for three months); *West v. Gilbert*, 361 F.2d 314, 316 (2d Cir. 1966) (upholding denial of Rule 60 relief based on a delay of approximately three months); *Stonewall Ins. Co. v. Nat'l Gypsum Co.*, No. 86 Civ. 9671, 1992 WL 51567, at *6 (S.D.N.Y. Mar. 9, 1992) (finding delay of more than a year to be unreasonable).

[11] Because the Court finds that the motion should be rejected for alternative grounds, the Court need not consider the parties' dispute over whether Defendants were diligent in discovering this information.

---

**CIVIL MINUTES – GENERAL**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | | |

Gabriel Rivers [we]re in excess of those allowed under the Permit." *Natural Res. Def. Council*, 725 F.3d at 1210.  As Defendants argue, however, this ruling concerned only the 2001 permit and thus does not establish that Defendants are liable under the 2012 permit. *See id.* at 1199 & n.7 (stating that "the version of the Permit at issue in this litigation came into force on December 13, 2001" and noting that, "[o]n November 8, 2012, the Regional Board issued a new NPDES permit to the County Defendants and various other permittees"); *id.* at 1205 (noting that the court's "sole task at this point of the case is to determine what Plaintiffs are required to show in order to establish *liability* under the terms of *this particular* NPDES permit").  And although the parties dispute the extent of the changes, the parties agree that the 2012 Permit changed various provisions of the 2001 Permit.  Accordingly, the Court must determine whether the changes to these provisions in the 2012 Permit render Plaintiffs' claims for injunctive relief moot, which they would if Defendants are now in compliance and "it is '*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)); *accord Natural Res. Def. Council, Inc. v. Texaco Ref. & Mktg., Inc.*, 2 F.3d 493, 502 (3d Cir. 1993).[12]

Plaintiffs correctly note that "where the limits contained in a superceded permit are incorporated into or made more strict in the new permit, there is no reason to allow a defendant to avoid enforcement of those limits."  *Natural Res. Def. Council, Inc. v. Texaco Ref. & Mktg., Inc.*, 719 F. Supp. 281, 290 (D. Del. 1989), *order vacated in part on other grounds*, 906 F.2d 934 (3d Cir. 1990); *accord Natural Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 992 & n.2 (9th Cir. 2000) (upholding injunction based on provisions in three different stormwater permits that were issued during pendency of litigation because the provisions at issue "remained essentially consistent" throughout).  As Defendants argue, however, "where the relevant governmental authorities have *relaxed* the NPDES standards, a plaintiff's claims for violations of the superceded permit

---

[12] Both parties provide incomplete statements of the standard from *Gwaltney*.  Defendants argue that they need only demonstrate that "there is no reasonable expectation that the wrong will be repeated," whereas Plaintiffs contend that Defendants must establish that it is "absolutely clear" that Defendants will not violate the permit again.  The correct standard incorporates both of these concepts, requiring Defendants to establish that it is "absolutely clear" that no violations can "reasonably be expected to recur."  *Gwaltney*, 484 U.S. at 66.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

do indeed become moot." *Mass. Pub. Interest Research Grp. v. ICI Ams. Inc.*, 777 F. Supp. 1032, 1035 (D. Mass. 1991). This rule is settled as to claims for injunctive relief because, as the Supreme Court has noted, "the interest of the citizen-plaintiff is primarily forward-looking." *Gwaltney*, 484 U.S. at 59. The parties thus dispute whether the changes in the permit enhanced or relaxed the standards, whether Defendants are currently in compliance with those standards, and whether it is "*absolutely clear*" that Defendants' violations could "reasonably be expected to recur." *Id.* at 66.

### a. Changes in the 2012 Permit

Plaintiffs' second, third, and fifth claims are based on one provision of the 2001 Permit—which the parties refer to as the "receiving water limitations" provision—that prohibits "discharges that cause or contribute to violations of Water Quality Standards."[13] (*See* FAC ¶¶ 64, 283, 307–08, 316–17, 338.) While Defendants agree that the 2012 Permit retained "in substantial form the 2001 permit's original receiving water limitation provision[]," they argue that the 2012 Permit "modified in fundamental ways the manner in which permittees comply with this provision." (Mot. at 1, 12.) Specifically, the 2012 Permit created new programs known as Watershed Management Programs ("WMPs") and Enhanced Watershed Management Programs ("EWMPs") and added requirements relating to TMDLs, which represent the "level[s] necessary to implement the applicable water quality standards." 33 U.S.C. § 1313(d)(1)(C). Consequently, while Defendants concede that the Ninth Circuit's ruling interpreting the 2001 Permit made clear that Permittees are liable as a matter of law when their pollution monitoring conclusively demonstrates that the pollution levels are in excess of those allowed in the permit, *see Natural Res. Def. Council*, 725 F.3d at 1210, they contend that the 2012 Permit provides that such exceedances *do not* constitute violations if the Permittee is otherwise in compliance with a WMP, an EWMP, or the Permit's TMDL provisions.

The purpose stated in the 2012 Permit for introducing these new methods of compliance is "to allow Permittees the flexibility to develop Watershed Management Programs to implement the requirements of this Order on a watershed scale through customized strategies, control measures, and BMPs." (Dkt. No. 396 at 35.) And, as

---

[13] Plaintiffs' fifth claim is also predicated on the permit's incorporation of the Ocean Plan's prohibition against discharges into an ASBS.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

Defendants argue, the Regional Board observed in its accompanying Fact Sheet that this marked a divergent approach from that taken in the 2001 Permit:

> There are several reasons for this shift in emphasis from Order No. 01-182. A watershed based structure for permit implementation is consistent with TMDLs . . . .
>
> An emphasis on watersheds is appropriate at this stage in the region's MS4 program to shift the focus of the Permittees from rote program development and implementation to more targeted, water quality driven planning and implementation.

(Dkt. No. 396 at 79.) Defendants thus argue that the 2012 Permit has changed the lens through which pollutants in stormwater are viewed in Los Angeles County. They argue that "[i]nstead of viewing stormwater solely through the lens of water quality, WMPs and EWMPs constitute a watershed-based approach to implementing water quality improvements and EWMPs emphasize the use of stormwater as a resource." (Mot. at 1–2; *accord* Mot. at 13.)

Importantly, the 2012 Permit also made clear that a Permittee who complies with the WMP, EWMP, and TMDL programs *shall be in compliance* with receiving water limitations for purposes of the provision at issue here. For example, Section VI.C.2.b of the Permit states: "A Permittee's full compliance with all requirements and dates for their achievement in an approved Watershed Management Program or EWMP shall constitute a Permittee's compliance with the receiving water limitations provisions in Part V.A. of this Order for the specific water body-pollutant combinations addressed by an approved Watershed Management Program or EWMP." (*See* Dkt. No. 396 at 40; *accord* Dkt. No. 396 at 41 (Section VI.C.3.a) ("A Permittee's full compliance with all requirements and dates for their achievement in an approved Watershed Management Program or EWMP shall constitute a Permittee's compliance with provisions pertaining to applicable interim water quality based effluent limitations and interim receiving water limitations.").) As for TMDLs, Section VI.E.2.c.ii states: "A Permittee's full compliance with the applicable TMDL requirement(s), including compliance schedules, of this Part VI.E. and Attachments L through R constitutes compliance with Part V.A. of this Order for the specific pollutant addressed in the TMDL." (Dkt. No. 396 at 59.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | | |

Plaintiffs themselves have recognized this effect of the 2012 Permit in their petition to the State Board challenging the Permit.  There, Plaintiffs stated:

> Rather than maintaining the 2001 Permit's prohibition against discharges that cause or contribute to an exceedance of water quality standards, the 2012 Permit creates safe harbors that exempt compliance with the Receiving Water Limitations for Permittees that elect to participate in a WMP or an EWMP. . . .

> The 2012 Permit creates safe harbors by deeming a Permittee to be in compliance with the Permit's [Receiving Water Limitations] (which was required by the 2001 Permit), both once a WMP or an EWMP has been approved by the Regional Board *and during plan development*.

(Dkt. No. 398 at 5 (emphasis added).)  Plaintiffs thus concede not only that the 2012 Permit provides Permittees with other methods of compliance, but also that those Permittees are deemed to be in compliance while they are developing a WMP or EWMP, provided that the Permittee meets all relevant deadlines and criteria required by that plan.  The same is true with regard to TMDLs.  As the Regional Board's Fact Sheet accompanying the 2012 Permit states:

> The Regional Water Board recognizes that, in the case of impaired waters subject to a TMDL, the permit's receiving water limitations for the pollutants addressed by the TMDL may be exceeded during the period of TMDL implementation.  Therefore, this Order provides, in Part VI.E.2.c, that *a Permittee's full compliance with the applicable TMDL requirements pursuant to the compliance schedules in this Order constitutes a Permittee's compliance with the receiving water limitations provisions* in Part V.A. of this Order for the particular pollutant addressed by the TMDL.

(Dkt. No. 396 at 78 (emphasis added).)[14]  Accordingly, pursuant to the changes in the 2012 Permit, a Permittee can now demonstrate its compliance by initiating a watershed

---

[14] (*See also* Dkt. No. 396 at 78 ("A Permittee's full compliance with all requirements and dates for their achievement in an approved Watershed Management Program or enhanced Watershed Management Program constitutes compliance with the receiving water limitations provisions in Part V.A. of the Order

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | | |

program such as a WMP or EWMP or by establishing its TMDLs, provided that it meets the requirements and deadlines identified by the Regional Board in the 2012 Permit.

### b. Defendants Are Currently in Compliance

Defendants argue that the introduction of these programs renders them in compliance with the new Permit because, "unlike the 2001 permit, the 2012 permit gives permittees time to accomplish compliance with water quality standards in light of the new TMDL requirements and as an incentive to design and implement WMPs and EWMPs." (Mot. at 2.) Indeed, the 2012 Permit allows Permittees eighteen and thirty months, respectively, to submit draft WMPs and EWMPs, and it makes clear that they are in compliance during the implementation of these plans provided that they keep up with all requirements and deadlines.

Here, it is undisputed that Defendants have filed WMP and EWMP work plans for all watersheds into which they discharge and which are monitored by the 2012 Permit. (*See* Mot. at 21; Opp'n at 13; *see also* George Decl. ¶¶ 3–5; Dkt. No. 426 (George Deposition) at 11–21.) Defendants have also submitted a declaration by the Assistant Deputy Director of the Los Angeles County Department of Public Works indicating that Defendants are complying with all TMDL Permit requirements related to the Los Angeles and San Gabriel Rivers (the subjects of these claims). (George Decl. ¶ 5.) Neither party suggests that Defendants have at this point failed to meet any of the requirements or deadlines imposed by the 2012 Permit. Accordingly, it appears that Defendants are currently deemed to be in compliance with the 2012 Permit at least based on their participation in WMP and EWMP work plans.

As discussed above, to find that this case no longer retains a justiciable case or controversy, the Court must determine that "it is '*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Gwaltney*, 484 U.S. at 66. Plaintiffs make two arguments as to why the Court should conclude that it is not absolutely clear.

---

for the specific water body-pollutant combinations addressed by an approved Watershed Management Program or enhanced Watershed Management Program.").)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

First, Plaintiffs' primary argument is that Defendants could fall out of compliance anytime by failing to meet deadlines for their WMP or EWMP programs or their TMDL requirements, a possibility which, by itself, makes it unclear that Defendants' violations will not recur. For example, Plaintiffs argue that there is no guarantee that the Regional Board will approve each of Defendants' watershed programs. (Opp'n at 13.) In support of this argument, they note that Defendants submitted draft WMPs to the Regional Board last summer, and that the Board provided comments and "necessary revisions" to be made to those drafts. (Opp'n at 13.) Plaintiffs suggest that the need for revisions demonstrates the likelihood (or at least reasonable possibility) that Defendants' watershed programs will not be approved. But the need for revisions suggests no such thing; in fact, Plaintiffs note that "defendants submitted *revised*, final WMPs" in January 2014. (Opp'n at 13 (emphasis added).) That Defendants at least revised their programs in response to the Regional Board's comments and revisions suggests (even if it does not establish) a commitment to compliance more than a likelihood of falling out of compliance.

Plaintiffs' related arguments regarding the many requirements and deadlines that Defendants must meet to have their watershed programs eventually approved are similarly speculative. (*See* Opp'n at 14–16.) It is not disputed that the watershed programs require Permittees to meet certain requirements and deadlines, but the fact that Defendants *may* fail to meet a requirement or deadline in the future is not enough to demonstrate any expectation that Defendants will fall out of compliance. *See Miss. River Revival, Inc. v. City of Minneapolis, Minn.*, 319 F.3d 1013, 1016–17 (8th Cir. 2003) ("We refuse to speculate that these public bodies will allow the resumption of discharges without a permit. Thus, the only violations alleged by plaintiffs cannot reasonably be expected to recur."). In fact, Plaintiffs' argument on these bases could be extended to find a justiciable case or controversy over the compliance of *any* Permittee seeking to demonstrate its compliance through these watershed programs, as it is just as possible for any other Permittee to fail to have its watershed program approved in the future. While the burden remains with Defendants to prove that it is absolutely clear that they are not reasonably likely to fall out of compliance, following Plaintiffs' argument would transform this burden from "heavy" to impossible. The Court is unwilling to follow this reasoning, particularly in light of evidence that Defendants intend to abide by all requirements to remain in compliance. (George Decl. ¶¶ 4–6; Dkt. No. 426 at 17–21.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | | |

Second, Plaintiffs argue that the State Board could overturn the Regional Board's 2012 Permit and change the requirements for compliance. (*See* Opp'n at 6–7.) Specifically, Plaintiffs contend that if the State Board adopts its tentative resolution of the pending appeal regarding the 2012 Permit, "[e]ven permittees successfully implementing an EWMP, therefore, would need to implement additional measures to achieve final TMDL limits in fact." (Opp'n at 7.) But there is no reason to suspect that Defendants would not comply with any additional measures required by the State Board. Rather, as discussed above, all evidence before the Court suggests that Defendants will meet any such compliance requirements mandated by the Regional Board. Consequently, the Court finds nothing in the record to indicate a reasonable expectation that Defendants will fall out of compliance with the 2012 Permit.

Reaching a contrary conclusion would effectively usurp the position of the Regional Board in evaluating Defendants' compliance with measures it has adopted. Unlike in the 2001 Permit, Defendants now have multiple methods by which to demonstrate their compliance. The Ninth Circuit has already determined that Defendants' admitted exceedances violated the 2001 Permit as a matter of law, but that decision explicitly considered only the terms of the 2001 permit. *See Natural Res. Def. Council*, 725 F.3d at 1205 (stating that the court's "sole task at this point of the case is to determine what Plaintiffs are required to show in order to establish *liability* under the terms of *this particular* NPDES permit"). Under the 2012 Permit, Defendants can now demonstrate their compliance by participating in a watershed program or by establishing the TMDLs, as discussed above. The Board has not determined that Defendants have failed to comply with any requirements or deadlines mandated by these programs, and the Court has been provided with no evidence that Defendants will not comply to the fullest extent. Of course, if Defendants fall out of compliance by, for example, failing to meet the requirements for their WMP and EWMP programs, a justiciable case or controversy will arise, and Plaintiffs may serve an appropriate notice letter pursuant to 33 U.S.C. § 1365(b)(1). At this stage, however, the Court finds that Defendants are currently in compliance with the applicable permit, and that it is absolutely clear that Defendants cannot reasonably be expected to fall out of compliance. *Gwaltney*, 484 U.S. at 66. As a result, the Court finds Plaintiffs' remaining claims for injunctive relief to be moot. *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

*id.*; *Mass. Pub. Interest Research Grp.*, 777 F. Supp. at 1035; *Texaco Ref. & Mktg.*, 2 F.3d at 502.[15]

### 2. Plaintiffs' Claims for Civil Penalties Are Not Moot

Although the Court has found that Plaintiffs' claims for injunctive relief are moot, whether that determination should also moot Plaintiffs' claims for civil penalties based on past violations is not well settled. As the parties concede, the Supreme Court has not explicitly addressed this issue, and there is no consensus among the federal courts on how to resolve it. "As is ordinarily the case with monetary relief, liability for civil penalties under the Clean Water Act attaches at the time the violations occur, not at the time of the judgment." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1153 (9th Cir. 2000). In *Ecological Rights Foundation*, the Ninth Circuit was confronted with an argument that the case had become moot because a new permit superseded the permit on which the complaint was based. *Id.* Although it did not decide that issue, the court nevertheless reasoned: "Even if the plaintiffs' claims for injunctive or declaratory relief for violations of the earlier General Permit became moot when the 1997 General Permit went into effect—an issue we do not decide—the plaintiffs' claims for civil penalties and attorneys' fees would remain viable." *Id.* As the court explained, "such monetary penalties continue to fulfill their purpose after the issuance of a new permit: Civil penalties deter future violations of the Clean Water Act even when injunctive relief is inappropriate." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[C]ivil penalties in Clean Water Act cases do more than promote immediate compliance by limiting the defendant's economic incentive to delay its attainment of permit limits; they also deter future violations.")).

Consequently, the Ninth Circuit has joined other circuits in holding that the issuance of a new permit that moots injunctive relief claims under the Clean Water Act does not automatically moot civil penalty claims as well. *Id.*; *see also Texaco Ref. & Mktg.*, 2 F.3d at 503 ("[We] hold that claims for damages are not moot because an

---

[15] Because the Court finds Plaintiffs' claims for injunctive relief to be moot for alternative reasons, it need not consider Defendants' arguments that the Ninth Circuit's mandate relied on monitoring provisions that are no longer applicable or that Plaintiffs' fifth cause of action fails in light of the Regional Board's 2012 exception to the Ocean Plan's ASBS waste discharge prohibition.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 08-01467 BRO (PLAx)** | Date | March 30, 2015 |
|---|---|---|---|
| Title | **NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL.** | | |

intervening NPDES permit eliminates any reasonable possibility that Texaco will continue to violate specified parameters."); *Atl. States Legal Found., Inc. v. Pan Am. Tanning Corp.*, 993 F.2d 1017, 1021 (2d Cir. 1993) ("We hold . . . that a defendant's ability to show, after suit is filed but before judgment is entered, that it has come into compliance with limits on the discharge of pollutants will not render a citizen suit for civil penalties moot."); *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1135 (11th Cir. 1990) ("[I]f the parties are able to make a valid request for injunctive relief at the time the complaint is filed, then they may continue to maintain a suit for civil penalties, even when injunctive relief is no longer appropriate."); *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 696 (4th Cir. 1989) ("[T]he penalty factor keeps the controversy alive between plaintiffs and defendants in a citizen suit, even though the defendant has come into compliance and even though the ultimate judicial remedy is the imposition of civil penalties assessed for past acts of pollution."). *But see Miss. River Revival*, 319 F.3d at 1016 ("The Clean Water Act authorizes the EPA to seek civil penalties for past violations, and such a claim would not be mooted by the defendant's subsequent compliance. But the Act limits citizen suit plaintiffs to remedies that will redress ongoing and future injury, so the *Laidlaw* mootness standard applies." (internal citation omitted)).

Nevertheless, Defendants argue that this case is distinguishable from *Ecological Rights Foundation*—which involved the introduction of a *stricter* permit—because "[t]his is not a case in which civil penalties would serve a deterrent purpose." (Mot. at 24.) Defendants further argue that the Ninth Circuit here did not base its finding of liability on any evidence related to Defendants' conduct, holding Defendants liable solely because they were Permittees whose monitoring program demonstrated that they were in violation of the Permit. The Court finds this argument unpersuasive. As Plaintiffs argue, the Ninth Circuit found Defendants liable as a matter of law based on self-reported water sampling data that "conclusively demonstrate that the County Defendants are not 'in compliance' with the Permit conditions." *Natural Res. Def. Council*, 725 F.3d at 1206–07. In fact, the Ninth Circuit explicitly rejected Defendants' argument, based on "their perception of the evidentiary burden," "that they cannot be held liable for Permit violations based solely on the data published in the District's monitoring reports." *Id.* at 1204. More importantly, even if, as Defendants argue, the Ninth Circuit did not

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | | |

determine that Defendants were *responsible* for those violations, that would not render
the issue moot; it would simply require further determination.

For the reasons discussed above, Defendants' motion to dismiss is **GRANTED in
part** and **DENIED in part**. Plaintiffs' claims for injunctive relief are moot because they
are based on a permit that has been superseded and because Defendants are now in
compliance with the new permit. Plaintiffs' claims for monetary civil penalties, however,
are not mooted by the issuance of this new permit.

### C. Motion for Partial Summary Judgment

Finally, the Court will address Plaintiffs' motion for summary judgment. In this
motion, Plaintiffs ask that the Court (1) enumerate Defendants' already-adjudicated
violations of the 2001 Permit, (2) grant Plaintiffs partial summary judgment on
Defendants' continued violations of the 2001 Permit after 2009 (which have not yet been
determined), and (3) strike Defendants' demand for a jury trial.

### 1. Defendants' Enumerated Violations

Defendants' primary argument in opposition to Plaintiffs' request to enumerate
Defendants' violations is that Plaintiffs have not yet established Defendants'
*responsibility* for any violations. In support of this argument, Defendants rely on one
sentence from the Ninth Circuit's mandate, in which the court held that "a finding of
*liability* against the County Defendants would not, as defendants argue, hold any County
Defendant responsible for discharges for which they are not 'the operator.'" *Natural Res.
Def. Council*, 725 F.3d at 1206. As Plaintiffs argue, however, this statement referred to
the Court's role in fashioning a remedy, not in establishing the violations for which
Defendants may be liable. Indeed, the Ninth Circuit explicitly rejected the argument that
only those entities *responsible* for a particular violation can be liable for it:

> Reading the clause that "[e]ach permittee is responsible only for a discharge
> for which it is the operator" to preclude use of the mass-emission monitoring
> data to "assess [] compliance with this [Permit]" would render the
> monitoring provisions of the Permit largely meaningless. Under the County
> Defendants' reading of the Permit, individual Permittees could discharge an

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

> unlimited amount of pollutants from the LA MS4 but never be held liable for
> those discharges based on the results of the mass-emissions monitoring, even
> though that monitoring is explicitly intended to assess whether Permittees
> are in compliance with Part 2's discharge limitations.  We are unwilling to
> accept such a strained interpretation.

*Id.* (modifications in original).  Thus, while any remedy fashioned by the Court must
require a Permittee in violation of the Permit to "take appropriate remedial measures with
respect to its *own* discharges"—a requirement that is irrelevant now that the Court has
determined Plaintiffs' claims for injunctive relief to be moot—the Ninth Circuit's holding
makes clear that Defendants are still *liable* for any Permit exceedances exhibited by
Defendants' monitoring stations.  *Id.* at 1206–07.

    Next, Defendants raise several arguments as to why the 147 Permit violations
listed by Plaintiffs overstate the number of exceedances in the Los Angeles and San
Gabriel Rivers.  (Opp'n at 5–16.)  Specifically, Defendants argue that eleven fecal
cloriform exceedances should be excused due to the weather conditions at the time, that
the presence of aluminum did not violate the 2001 Permit, and that various copper and
zinc discharges were not in excess of the applicable standards.  As Plaintiffs argue,
however, the Ninth Circuit issued its mandate in reliance on Defendants' self-reported
exceedances submitted in this Court's prior summary judgment proceedings.  In fact, in
remanding to this Court for the appropriate remedy, the Ninth Circuit explicitly
concluded "that the pollution exceedances detected at the County Defendants' monitoring
stations [we]re sufficient to establish the County Defendants' liability for NPDES permit
violations as a matter of law."  *Natural Res. Def. Council*, 725 F.3d at 1197.

    Plaintiffs correctly argue that Defendants cannot now, on remand, argue that the
reports do not accurately reflect the exceedances for which they should be liable.  This is
true for two reasons.  First, to the extent that Defendants are arguing that the reports do
not accurately reflect the data (a characterization of Defendants' argument that
Defendants dispute), they are prohibited from doing so by *Sierra Club v. Union Oil Co.
of California*, in which the Ninth Circuit held "that when a permittee's reports indicate
that the permittee has exceeded permit limitations, the permittee may not impeach its own
reports by showing sampling error."  813 F.2d 1480, 1492 (9th Cir. 1987), *vacated on
other grounds*, 485 U.S. 931 (1988), *judgment reinstated and amended*, 853 F.2d 667

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 08-01467 BRO (PLAx)** | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | **NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL.** | | | |

(9th Cir. 1988). Second, to the extent that Defendants are raising arguments regarding their liability for these discharges (including whether these discharges constituted exceedances), they forfeited these arguments by never disputing the accuracy of their self-reported exceedances until now. *See Brass v. Cnty. of L.A.*, 328 F.3d 1192, 1198 (9th Cir. 2003) (finding district court's exclusion of arguments made for the first time on remand to be proper). "An argument bypassed by the litigants, and therefore not presented in the court of appeals, may not be resurrected on remand and used as a reason to disregard the court of appeals' decision." *Barrow v. Falck*, 11 F.3d 729, 730 (7th Cir. 1993). That is precisely what is happening here; having lost at the circuit level, Defendants are attempting to raise new arguments in an attempt to avoid the liability that the Ninth Circuit has already ordered this Court to impose.

Accordingly, the Court finds it appropriate to enumerate the violations previously found by this Court and the Ninth Circuit. In doing so, the Court is guided by the Ninth Circuit's mandate, which held: "Because the results of County Defendants' pollution monitoring conclusively demonstrate that pollution levels in the Los Angeles and San Gabriel Rivers are in excess of those allowed under the Permit, the County Defendants are liable for Permit violations as a matter of law." *Natural Res. Def. Council*, 725 F.3d at 1210. As a result, Defendants are liable for the 147 exceedances described in Defendants' monitoring reports, which the Ninth Circuit found were conclusively demonstrated to be Permit violations by Defendants' own pollution monitoring. These violations are enumerated in Appendix A.

For similar reasons, and because the Court has denied Defendants' motion for reconsideration of the Court's prior order granting Plaintiffs' summary judgment on their fifth cause of action, the Court also enumerates the 48 Permit violations caused by Defendants' discharges of waste from District storm drains to an ASBS in 2004, which are enumerated in Appendix B.

### 2. Defendants' Continued Violations After 2009

Next, Plaintiffs request that the Court grant them partial summary judgment on additional, self-reported exceedances which they claim constitute permit violations as a matter of law based on this Court's holdings and the Ninth Circuit's mandate. The Court agrees in part. As the Court explained above, the issuance of the 2012 Permit rendered

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 08-01467 BRO (PLAx)** | Date | March 30, 2015 |
|---|---|---|---|
| Title | **NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL.** | | |

moot Plaintiffs' claims for injunctive relief because there is no evidence that Defendants
have not been in compliance with that Permit.  Up until the issuance of that Permit,
however—or, more accurately, until that Permit went into effect on December 28, 2012,
(*see* Dkt. No. 393-2 at 10)—any exceedances reported by Defendants' pollution
monitoring constitute violations of the 2001 Permit as a matter of law.  *See Natural Res.
Def. Council*, 725 F.3d at 1210.  From the time that Plaintiffs submitted their motion for
summary judgment in September 2009 until the 2012 Permit went into effect on
December 28, 2012, Defendants disclosed 66 pollution limit violations in the Los
Angeles and San Gabriel Rivers for cyanide, pH, dissolved copper, dissolved zinc, fecal
coliform, and E.coli bacteria.  (Defs.' Response to Pls.' Separate Statement of
Undisputed Facts (Dkt. No. 413) ¶ 1.)  Under the Ninth Circuit's ruling, these
exceedances constitute permit violations as a matter of law for which Defendants are
liable.  *See Natural Res. Def. Council*, 725 F.3d at 1210.  Accordingly, the Court hereby
**GRANTS** Plaintiffs' summary judgment on the additional watershed violations, which
are enumerated in Appendix C.

Plaintiffs also request partial summary judgment on additional ASBS waste
discharge violations that allegedly occurred in 2012 and 2013.  As the Court has already
explained, any discharges after December 28, 2012 (when the 2012 Permit went into
effect) are not actionable.  Nevertheless, that leaves 24 alleged dry weather discharges—
11 by the County and 13 by the District—that Plaintiffs claim Defendants reported prior
to December 2012.  (*See* Dkt. No. 389-1 at 11–12.)

Defendants argue first that the March 2012 State Board Resolution authorizing an
"exception" to the ASBS discharge prohibition exempts them from these violations.  As
Plaintiffs argue, however, the Resolution does not apply to *dry weather* discharges such
as those alleged by Plaintiffs here.  (*See* Dkt. No. 393-8 at 4 ("Only storm water and
nonpoint source waste discharges by the applicants listed in Attachment A to this
resolution are covered by this resolution.  All other waste discharges to ASBS are
prohibited, unless they are covered by a separate, applicable Ocean Plan exception.").)

Defendants also contend that the majority of these remaining discharges do not
actually qualify as "discharges" under the meaning of the Ocean Plan because they never
reached the ocean; they merely reached the beach.  (Opp'n at 17–18; *see also* Dkt. No.
393-6 at 47–48.)  Indeed, from the tables Plaintiffs rely on to support their additional

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | | |

ASBS violations, it appears that only two of the "flows" reached the ocean. (*See* Dkt. No. 393-6 at 47–48.) In support of Defendants' theory that this fact prohibits the remaining flows from constituting "discharges," however, Defendants rely on a glossary definition in the 2012 Resolution, which, as explained above, applies only to "storm water and nonpoint source waste discharges." (Dkt. No. 393-8 at 4.) Moreover, Plaintiffs cite a decision by Judge Matz in a parallel proceeding, in which Judge Matz interpreted *Caltrans* (which, as discussed above, *see supra* n.8 and accompanying text, is a binding, precedential order) to conclude that "the simple act of discharges falling onto a beach abutting the ASBS constituted a violation of the Ocean Plan." *See Santa Monica Baykeeper v. City of Malibu*, No. CV 08-1465 AHM (PLAx) (C.D. Cal. Aug. 2, 2010) (Dkt. No. 144 at 17) (attached herein as Dkt. No. 393-7 at 6). Indeed, in *Caltrans*, the State Board explicitly rejected Defendants' argument, stating:

> Caltrans argues that because its storm water pipes discharge directly above the high tide line, that the discharges are not "into" the ASBS. In fact, the findings in the CDO and the discharge prohibition in the Ocean Plan refer to discharges "to" ASBS, and not discharges "into" ASBS. The Regional Water Board responds that the discharges, which terminate on bluffs above the beach, are in fact "to" the ASBS. We find that this interpretation of the discharge prohibition is reasonable. Indeed, if it were not upheld, the only discharges that would be prohibited would be ocean outfalls from major facilities.

*Caltrans*, 2001 WL 36247991, at *3. As a result, Defendants have failed to point to a triable issue that these additional "flows" do not constitute the type of ASBS discharges that the Court has found to be Permit violations.[16] The Court therefore **GRANTS** Plaintiffs summary judgment on this issue and finds that the County is liable for the 11 additional discharges enumerated in Appendix D and that the District is liable for the 13 additional discharges listed in Appendix E.

---

[16] For the same reasons discussed above, Defendants' arguments regarding who *caused* or was responsible for the discharges are irrelevant for purposes of determining *liability*. Such arguments are appropriate for determining a remedy, but the Ninth Circuit found that Defendants' pollution monitoring—by itself—"conclusively demonstrate[d] that the County Defendants are not 'in compliance' with the Permit conditions." *Natural Res. Def. Council*, 725 F.3d at 1206–07.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | | |

### 3. Defendants' Demand for a Jury Trial

As discussed above, Defendants' liability in this matter has already been established by the Ninth Circuit. *See Natural Res. Def. Council*, 725 F.3d at 1210. The only issue Defendants raise in support of maintaining their right to a jury trial is the notion of responsibility. But this issue relates only to the appropriate remedy that the Court must fashion for Defendants' established violations, and not whether Defendants are indeed liable. As a result, the only remaining issue to be resolved is what civil penalties to award for Defendants' violations. And in the context of the Clean Water Act, "Congress intended that trial judges perform the highly discretionary calculations necessary to award civil penalties after liability is found." *Tull v. United States*, 481 U.S. 412, 425 (1987). Accordingly, because no triable issue remains for the jury to determine, the Court hereby **STRIKES** Defendants' demand for a jury trial.

## V.   CONCLUSION

For the foregoing reasons, the Court rules as follows:

- Defendants' motion for reconsideration is **DENIED**;

- Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part** on the basis that Plaintiffs' claims for injunctive relief are moot, but that Plaintiffs' claims for monetary civil penalties remain active; and

- Plaintiffs' motion for summary judgment is **GRANTED in part** and **DENIED in part** in accordance with the Court's ruling on Defendants' motion to dismiss and motion for reconsideration.

**IT IS SO ORDERED.**

| | : |
|---|---|
| Initials of Preparer | rf |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

**Appendix A**

| Date | Constituent | River |
|---|---|---|
| 10/28/2003 | Cyanide | Los Angeles River |
| 10/28/2003 | Cyanide | San Gabriel River |
| 10/28/2003 | Fecal Coliform | Los Angeles River |
| 10/28/2003 | Total Copper | Los Angeles River |
| 10/31/2003 | Cyanide | Los Angeles River |
| 10/31/2003 | Fecal Coliform | Los Angeles River |
| 10/31/2003 | Fecal Coliform | San Gabriel River |
| 10/31/2003 | Total Aluminum | Los Angeles River |
| 10/31/2003 | Total Copper | Los Angeles River |
| 10/31/2003 | Total Zinc | Los Angeles River |
| 12/25/2003 | Fecal Coliform | Los Angeles River |
| 12/25/2003 | Fecal Coliform | San Gabriel River |
| 12/25/2003 | Total Copper | Los Angeles River |
| 1/1/2004 | Fecal Coliform | Los Angeles River |
| 1/1/2004 | Total Copper | Los Angeles River |
| 1/13/2004 | Cyanide | Los Angeles River |
| 1/13/2004 | Total Zinc | Los Angeles River |
| 10/17/2004 | Fecal Coliform | Los Angeles River |
| 10/17/2004 | Fecal Coliform | San Gabriel River |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

| | | |
|---|---|---|
| 10/17/2004 | Total Aluminum | Los Angeles River |
| 10/17/2004 | Total Copper | Los Angeles River |
| 10/17/2004 | Total Copper | San Gabriel River |
| 10/17/2004 | Total Zinc | Los Angeles River |
| 10/26/2004 | Cyanide | Los Angeles River |
| 10/26/2004 | Fecal Coliform | Los Angeles River |
| 10/26/2004 | Fecal Coliform | San Gabriel River |
| 10/26/2004 | Total Aluminum | Los Angeles River |
| 10/26/2004 | Total Copper | Los Angeles River |
| 10/26/2004 | Total Zinc | Los Angeles River |
| 11/16/2004 | Cyanide | Los Angeles River |
| 11/16/2004 | Total Copper | Los Angeles River |
| 12/5/2004 | Fecal Coliform | Los Angeles River |
| 12/5/2004 | Fecal Coliform | San Gabriel River |
| 12/5/2004 | Total Aluminum | Los Angeles River |
| 12/5/2004 | Total Aluminum | San Gabriel River |
| 12/5/2004 | Total Copper | Los Angeles River |
| 12/5/2004 | Total Copper | San Gabriel River |
| 12/5/2004 | Total Zinc | Los Angeles River |
| 1/7/2005 | Fecal Coliform | Los Angeles River |
| 1/7/2005 | Fecal Coliform | San Gabriel River |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

| | | |
|---|---|---|
| 1/7/2005 | Total Aluminum | Los Angeles River |
| 1/7/2005 | Total Aluminum | San Gabriel River |
| 1/7/2005 | Total Copper | Los Angeles River |
| 1/7/2005 | Total Copper | San Gabriel River |
| 3/17/2005 | Cyanide | Los Angeles River |
| 3/17/2005 | Fecal Coliform | Los Angeles River |
| 3/17/2005 | Total Copper | Los Angeles River |
| 10/17/2005 | Fecal Coliform | Los Angeles River |
| 10/17/2005 | Fecal Coliform | San Gabriel River |
| 10/17/2005 | Total Aluminum | San Gabriel River |
| 10/17/2005 | Total Copper | Los Angeles River |
| 10/17/2005 | Total Copper | San Gabriel River |
| 10/17/2005 | Total Zinc | Los Angeles River |
| 10/17/2005 | Total Zinc | San Gabriel River |
| 12/31/2005 | Fecal Coliform | Los Angeles River |
| 12/31/2005 | Fecal Coliform | San Gabriel River |
| 1/14/2006 | Dissolved Copper | Los Angeles River |
| 1/14/2006 | Fecal Coliform | Los Angeles River |
| 1/14/2006 | Fecal Coliform | San Gabriel River |
| 1/14/2006 | Total Copper | Los Angeles River |
| 1/14/2006 | Total Zinc | Los Angeles River |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

| 1/24/2006 | Cyanide | Los Angeles River |
|---|---|---|
| 1/24/2006 | Fecal Coliform | Los Angeles River |
| 1/24/2006 | Fecal Coliform | San Gabriel River |
| 2/17/2006 | Cyanide | Los Angeles River |
| 2/17/2006 | Fecal Coliform | Los Angeles River |
| 2/17/2006 | Total Copper | Los Angeles River |
| 2/17/2006 | Total Zinc | Los Angeles River |
| 4/25/2006 | Cyanide | Los Angeles River |
| 4/25/2006 | Fecal Coliform | Los Angeles River |
| 4/25/2006 | Total Copper | Los Angeles River |
| 4/25/2006 | Total Copper | San Gabriel River |
| 11/1/2006 | Cyanide | Los Angeles River |
| 11/1/2006 | Fecal Coliform | San Gabriel River |
| 11/1/2006 | Total Copper | Los Angeles River |
| 11/1/2006 | Total Copper | San Gabriel River |
| 12/9/2006 | Fecal Coliform | Los Angeles River |
| 12/9/2006 | Fecal Coliform | San Gabriel River |
| 12/9/2006 | Total Aluminum | Los Angeles River |
| 12/9/2006 | Total Aluminum | San Gabriel River |
| 12/9/2006 | Total Copper | Los Angeles River |
| 12/9/2006 | Total Copper | San Gabriel River |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 08-01467 BRO (PLAx)** | Date | March 30, 2015 |
|---|---|---|---|
| Title | **NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL.** | | |

| | | |
|---|---|---|
| 12/9/2006 | Total Zinc | Los Angeles River |
| 12/9/2006 | Total Zinc | San Gabriel River |
| 2/10/2007 | Total Aluminum | San Gabriel River |
| 2/10/2007 | Total Copper | San Gabriel River |
| 2/19/2007 | Cyanide | Los Angeles River |
| 2/19/2007 | Cyanide | San Gabriel River |
| 2/19/2007 | Fecal Coliform | Los Angeles River |
| 2/19/2007 | Fecal Coliform | San Gabriel River |
| 2/19/2007 | Total Aluminum | Los Angeles River |
| 2/19/2007 | Total Copper | Los Angeles River |
| 2/19/2007 | Total Copper | San Gabriel River |
| 2/19/2007 | Total Zinc | Los Angeles River |
| 2/22/2007 | Cyanide | Los Angeles River |
| 2/22/2007 | Fecal Coliform | Los Angeles River |
| 2/22/2007 | Fecal Coliform | San Gabriel River |
| 2/22/2007 | Total Aluminum | Los Angeles River |
| 2/22/2007 | Total Aluminum | San Gabriel River |
| 2/22/2007 | Total Copper | Los Angeles River |
| 2/22/2007 | Total Copper | San Gabriel River |
| 2/22/2007 | Total Zinc | Los Angeles River |
| 4/2/2007 | Total Copper | San Gabriel River |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

| | | |
|---|---|---|
| 4/9/2007 | Cyanide | Los Angeles River |
| 4/9/2007 | Fecal Coliform | Los Angeles River |
| 4/9/2007 | Total Copper | Los Angeles River |
| 9/21/07-9/22/07 | Cyanide | Los Angeles River |
| 9/21/07-9/22/07 | Fecal Coliform | Los Angeles River |
| 9/21/07-9/22/07 | Fecal Coliform | San Gabriel River |
| 9/21/07-9/22/07 | Total Aluminum | Los Angeles River |
| 9/21/07-9/22/07 | Total Aluminum | San Gabriel River |
| 9/21/07-9/22/07 | Total Copper | Los Angeles River |
| 9/21/07-9/22/07 | Total Copper | San Gabriel River |
| 9/21/07-9/22/07 | Total Zinc | Los Angeles River |
| 10/12/07-10/13/07 | Total Aluminum | Los Angeles River |
| 10/12/07-10/13/07 | Total Copper | Los Angeles River |
| 10/12/07-10/13/07 | Total Zinc | Los Angeles River |
| 11/25/07-11/26/07 | Fecal Coliform | Los Angeles River |
| 11/25/07-11/26/07 | Fecal Coliform | San Gabriel River |
| 11/25/07-11/26/07 | Total Aluminum | San Gabriel River |
| 11/29/07-12/01/07 | Dissolved Copper | Los Angeles River |
| 11/29/07-12/01/07 | Dissolved Zinc | Los Angeles River |
| 11/29/07-12/01/07 | Fecal Coliform | Los Angeles River |
| 11/29/07-12/01/07 | Fecal Coliform | San Gabriel River |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

| | | |
|---|---|---|
| 11/29/07-12/01/07 | Total Aluminum | Los Angeles River |
| 11/29/07-12/01/07 | Total Aluminum | San Gabriel River |
| 11/29/07-12/01/07 | Total Copper | Los Angeles River |
| 11/29/07-12/01/07 | Total Zinc | Los Angeles River |
| 12/06/07-12/08/07 | Fecal Coliform | Los Angeles River |
| 12/06/07-12/08/07 | Fecal Coliform | San Gabriel River |
| 12/06/07-12/08/07 | Total Aluminum | San Gabriel River |
| 12/06/07-12/08/07 | Total Copper | Los Angeles River |
| 12/06/07-12/08/07 | Total Copper | San Gabriel River |
| 12/06/07-12/08/07 | Total Zinc | San Gabriel River |
| 12/18/07-12/20/07 | Total Aluminum | Los Angeles River |
| 12/18/07-12/20/07 | Total Copper | Los Angeles River |
| 12/18/07-12/20/07 | Total Zinc | Los Angeles River |
| 11/4/2008 | Fecal Coliform | Los Angeles River |
| 11/4/2008 | Fecal Coliform | San Gabriel River |
| 1/12/2009 | Fecal Coliform | Los Angeles River |
| 1/12/2009 | Fecal Coliform | San Gabriel River |
| 2/12/2009 | Fecal Coliform | San Gabriel River |
| 2/13/2009 | Dissolved Copper | Los Angeles River |
| 2/13/2009 | Dissolved Zinc | Los Angeles River |
| 2/13/2009 | Fecal Coliform | Los Angeles River |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

| 3/23/2009 | Cyanide | Los Angeles River |
|---|---|---|
| 3/23/2009 | Fecal Coliform | San Gabriel River |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 08-01467 BRO (PLAx)** | Date | March 30, 2015 |
|---|---|---|---|
| Title | **NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL.** | | |

**Appendix B**

| Date | Number of flow | Number of flow | Outfall |
|---|---|---|---|
| 2004 | 2 wet weather flows | 2 dry weather flows | PD 306 – Line A |
| 2004 | 3 wet weather flows | | PD 306 – Line B |
| 2004 | 2 wet weather flows | 1 dry weather flow | PD 1174 |
| 2004 | 2 wet weather flows | | PD 1184 – Line A |
| 2004 | 2 wet weather flows | | PD 1184 – Line B |
| 2004 | 2 wet weather flows | | MTD 622 – Line 1 |
| 2004 | 2 wet weather flows | 10 dry weather flows | MTD 622 – Line 3 |
| 2004 | 2 wet weather flows | | MTD 622 – Line 4 |
| 2004 | 2 wet weather flows | 3 dry weather flows | MTD 622 – Line 4A |
| 2004 | 3 wet weather flows | 9 dry weather flows | MTD 622 – Line 5 |
| 2004 | 1 wet weather flow | | MTD 622 – Line 6 |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

**Appendix C**

| Date | Constituent | River |
|---|---|---|
| 10/13/2009 | Cyanide | San Gabriel River |
| 10/13/2009 | Dissolved Copper | Los Angeles River |
| 10/13/2009 | Fecal Coliform | Los Angeles River |
| 12/1/2009 | Cyanide | Los Angeles River |
| 12/1/2009 | Cyanide | San Gabriel River |
| 12/1/2009 | pH | Los Angeles River |
| 12/7/2009 | Cyanide | Los Angeles River |
| 12/7/2009 | Dissolved Copper | Los Angeles River |
| 12/7/2009 | pH | Los Angeles River |
| 12/11/2009 | Fecal Coliform | Los Angeles River |
| 1/17/2010 | Dissolved Zinc | San Gabriel River |
| 3/23/2010 | Fecal Coliform | San Gabriel River |
| 3/23/2010 | pH | Los Angeles River |
| 9/21/2010 | Fecal Coliform | Los Angeles River |
| 9/21/2010 | pH | Los Angeles River |
| 10/5/2010 | Cyanide | Los Angeles River |
| 10/5/2010 | Dissolved Zinc | Los Angeles River |
| 10/5/2010 | Fecal Coliform | Los Angeles River |
| 10/30/2010 | Fecal Coliform | Los Angeles River |

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 08-01467 BRO (PLAx)** | Date | March 30, 2015 |
|----------|---------------------------|------|----------------|
| Title | **NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL.** | | |

| | | |
|-----------|------------------|------------------|
| 10/30/2010 | Fecal Coliform | San Gabriel River |
| 11/19/2010 | Dissolved Zinc | Los Angeles River |
| 11/19/2010 | Fecal Coliform | Los Angeles River |
| 12/17/2010 | Dissolved Zinc | Los Angeles River |
| 12/17/2010 | pH | Los Angeles River |
| 12/17/2010 | pH | San Gabriel River |
| 1/24/2011 | pH | Los Angeles River |
| 2/16/2011 | Dissolved Zinc | Los Angeles River |
| 2/16/2011 | Fecal Coliform | Los Angeles River |
| 2/16/2011 | pH | San Gabriel River |
| 9/20/2011 | pH | Los Angeles River |
| 10/5/2011 | Dissolved Copper | Los Angeles River |
| 10/5/2011 | Dissolved Zinc | Los Angeles River |
| 11/11/2011 | Dissolved Copper | Los Angeles River |
| 11/11/2011 | Dissolved Zinc | Los Angeles River |
| 11/11/2011 | Fecal Coliform | Los Angeles River |
| 11/20/2011 | Dissolved Copper | Los Angeles River |
| 11/20/2011 | Dissolved Copper | San Gabriel River |
| 11/20/2011 | Dissolved Zinc | Los Angeles River |
| 11/20/2011 | Dissolved Zinc | San Gabriel River |
| 1/9/2012 | Fecal Coliform | San Gabriel River |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 08-01467 BRO (PLAx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL. | | |

| | | |
|---|---|---|
| 1/9/2012 | pH | Los Angeles River |
| 1/21/2012 | Dissolved Copper | Los Angeles River |
| 1/21/2012 | Dissolved Zinc | Los Angeles River |
| 3/16/2012 | Dissolved Copper | Los Angeles River |
| 3/16/2012 | Dissolved Zinc | Los Angeles River |
| 10/9/2012 | E. Coli | Los Angeles River |
| 10/11/2012 | Dissolved Copper | Los Angeles River |
| 10/11/2012 | Dissolved Copper | San Gabriel River |
| 10/11/2012 | Dissolved Zinc | Los Angeles River |
| 10/11/2012 | Dissolved Zinc | San Gabriel River |
| 10/11/2012 | E. Coli | San Gabriel River |
| 10/11/2012 | pH | Los Angeles River |
| 11/17/2012 | Dissolved Copper | Los Angeles River |
| 11/17/2012 | Dissolved Zinc | Los Angeles River |
| 11/17/2012 | pH | San Gabriel River |
| 11/30/2012 | Dissolved Copper | Los Angeles River |
| 11/30/2012 | Dissolved Zinc | Los Angeles River |
| 12/2/2012 | Cyanide | San Gabriel River |
| 12/2/2012 | Dissolved Copper | Los Angeles River |
| 12/2/2012 | Dissolved Zinc | Los Angeles River |
| 12/2/2012 | E. Coli | Los Angeles River |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 08-01467 BRO (PLAx)** | Date | March 30, 2015 |
|----------|----------------------------|------|----------------|
| Title | **NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL.** | | |

| | | |
|---|---|---|
| 12/13/2012 | Dissolved Copper | Los Angeles River |
| 12/13/2012 | E. Coli | Los Angeles River |
| 12/18/2012 | Dissolved Copper | Los Angeles River |
| 12/18/2012 | Dissolved Zinc | Los Angeles River |
| 12/18/2012 | E. Coli | Los Angeles River |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 08-01467 BRO (PLAx)** | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | **NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL.** | | | |

**Appendix D**

| Date | Number of flow | Outfall |
|---|---|---|
| February 2012 | 4 dry weather flows | ASBS-004 |
| February 2012 | 1 dry weather flow | ASBS-023 |
| March 2012 | 4 dry weather flows | ASBS-004 |
| April 2012 | 1 dry weather flow | ASBS-004 |
| April 2012 | 1 dry weather flow | ASBS-023 |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 08-01467 BRO (PLAx)** | | Date | March 30, 2015 |
|---|---|---|---|---|
| Title | **NATURAL RESOURCES DEFENSE COUNCIL, INC. ET AL. V. COUNTY OF LOS ANGELES ET AL.** | | | |

**Appendix E**

| Date | Number of flow | Outfall |
|---|---|---|
| January 2012 | 1 dry weather flow | ASBS-001 |
| February 2012 | 2 dry weather flows | ASBS-001 |
| February 2012 | 3 dry weather flows | ASBS-002 |
| February 2012 | 1 dry weather flow | ASBS-030 |
| March 2012 | 2 dry weather flows | ASBS-001 |
| March 2012 | 2 dry weather flows | ASBS-002 |
| April 2012 | 1 dry weather flow | ASBS-001 |
| April 2012 | 1 dry weather flow | ASBS-002 |