UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC. and SANTA MONICA BAYKEEPER,<br><br>                   Plaintiffs,<br><br>    v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>                   Defendants. | Case No. CV 08-1467 BRO (PLAx)<br><br>JUDGMENT RETAINING JURISDICTION TO ENFORCE SETTLEMENT AGREEMENT AND DISMISSING ACTION WITH PREJUDICE |

WHEREAS Plaintiffs and Defendants County of Los Angeles and Los Angeles Flood Control District have entered into a Settlement Agreement that is a full and final settlement of all of Plaintiffs' claims against all Defendants in this action;

WHEREAS the parties in their Settlement Agreement have stipulated to the Court retaining jurisdiction to enforce the Settlement Agreement, and to dismissing this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2);

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction for the purpose of resolving any disputes between the parties with respect to enforcement of any provision of the terms of the parties' Settlement Agreement attached hereto as Exhibit A;

1    IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this action
2  is dismissed with prejudice.
3    Except as set forth in the Settlement Agreement, each party shall bear its own
4  costs and attorneys' fees.
5    IT IS SO ORDERED.
6  DATED: November 23, 2016
7
8    By: _____
9         Honorable Beverly R. O'Connell
        United States District Court Judge
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into by and between Plaintiffs Natural Resources Defense Council, Inc. and Los Angeles Waterkeeper (previously known as Santa Monica Baykeeper), and Defendants County of Los Angeles and Los Angeles County Flood Control District. Plaintiffs and Defendants are hereafter referred to individually as "Party" and collectively as "Parties."

## RECITALS

**WHEREAS** on or about December 13, 2001, the California Regional Water Quality Control Board, Los Angeles Region, adopted Order No. 01-182, National Pollutant Discharge Elimination System (NPDES) Permit No. CAS004001, governing the discharge of stormwater and non-stormwater by Los Angeles County, the Los Angeles County Flood Control District and 84 municipalities in the Los Angeles Basin (Order No. 01-182 was amended on September 14, 2006, August 9, 2007, December 10, 2009, October 19, 2010 and April 14, 2011; Order No. 01-182, as amended, will hereafter be referred to as the "2001 Los Angeles County Municipal Stormwater Permit");

**WHEREAS** on May 31, 2007, September 10, 2007, and December 18, 2007, Plaintiffs served by certified mail notices of intent to sue under the Clean Water Act on the County of Los Angeles, the members of the County's Board of Supervisors in their official capacity as Supervisors, and Donald D. Wolfe, in his official capacity as Director of the Los Angeles County Department of Public Works, with copies to the United States Attorney General, the United States Environmental Protection Agency, the State Water Resources Control Board, and the California Regional Water Quality Control Board, Los Angeles Region, among other recipients, asserting that the County of Los Angeles had violated and continued to violate the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, by violating the 2001 Los Angeles County Municipal Stormwater Permit;

**WHEREAS** on March 3, 2008, Plaintiffs filed a Complaint against Defendants (as well as Michael Antonovich, Yvonne B. Burke, Don Knabe, Gloria Molina, and Zev Yaroslavsky, in

1

their official capacity as Supervisors, and Donald L. Wolfe, in his official capacity as Director of the Los Angeles County Department of Public Works) in the United States District Court, Central District of California, entitled *Natural Resources Defense Council, et al., v. County of Los Angeles, et al.* Case No. CV-08-01467 BRO (PLAx);

**WHEREAS** on July 3, 2008, Plaintiffs served by certified mail a notice of intent to sue under the Clean Water Act on the County of Los Angeles, the members of the County's Board of Supervisors in their official capacity as Supervisors, Donald D. Wolfe, in his official capacity as Director of the Los Angeles County Department of Public Works District, and the Los Angeles County Flood Control District, with copies to the United States Attorney General, the United States Environmental Protection Agency, the State Water Resources Control Board, and the California Regional Water Quality Control Board, Los Angeles Region, among other recipients, asserting that the Defendants had violated and continued to violate the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, by violating the 2001 Los Angeles County Municipal Stormwater Permit;

**WHEREAS** on September 19, 2008, Plaintiffs filed a First Amended Complaint against Defendants (as well as Michael Antonovich, Yvonne B. Burke, Don Knabe, Gloria Molina, and Zev Yaroslavsky, in their official capacity as Supervisors, and Dean D. Efstathiou, in his official capacity as Director of the Los Angeles County Department of Public Works);

**WHEREAS** Plaintiffs' First Amended Complaint alleges that the Defendants violated and continued to violate 33 U.S.C. §§ 1311(a) and 1342 by failing to comply with certain provisions of the 2001 Los Angeles County Municipal Stormwater Permit, including but not limited to a prohibition against non-stormwater discharges, a prohibition against stormwater discharges that cause or contribute to the violation of water quality standards in Los Angeles County watersheds, and a prohibition against the discharge of "waste" as defined by the California Water Code into areas designated by the State of California as "Areas of Special Biological Significance";

**WHEREAS** Plaintiffs' First Amended Complaint seeks civil penalties and injunctive

relief for the alleged Clean Water Act permit violations, among other types of relief;

**WHEREAS** on September 29, 2008 and October 27, 2008, Defendants filed Answers to Plaintiffs' First Amended Complaint, denying the allegations in Plaintiffs' First Amended Complaint; and

**WHEREAS** the Parties now agree that it is in the Parties' mutual interest to enter into a Settlement Agreement resolving this litigation;

**BASED ON THE FOREGOING RECITALS AND THE TERMS AND CONDITIONS CONTAINED HEREIN,** the Parties agree as follows:

## I.    DEFINITIONS

A.    Unless otherwise expressly defined in this agreement, terms used in this Settlement Agreement that are defined in the Clean Water Act, or in regulations promulgated under the Clean Water Act, have the meaning assigned to them in the statute or regulations.

B.    Whenever terms listed below are used in this Settlement Agreement, the following definitions apply:

1.    "Community-based organization" means a non-profit environmental, educational, social justice, or job-creation organization based in Los Angeles County.

2.    "Complaint" means the complaint filed in this Litigation on March 3, 2008.

3.    "Defendants" means the County of Los Angeles and the Los Angeles County Flood Control District. For purposes of this Settlement Agreement, "Defendants" does not include the individuals named in their official capacity as defendants in the Litigation.

4.    "Effective Date" means the date on which the District Court enters the Judgment Retaining Jurisdiction to Enforce Settlement Agreement and Dismissing Action with Prejudice.

5.    "EPA" means the United States Environmental Protection Agency.

6.    "Execution Date" means the date by which all Parties have signed the Settlement Agreement.

7.      "First Amended Complaint" means the First Amended Complaint filed in this Litigation on September 19, 2008.

8.      "Litigation" means *Natural Resources Defense Council, et al. v. County of Los Angeles, et al.*, No. CV-08-01467 BRO (PLAx) (C.D. Cal.), and all appeals arising out of that matter.

9.      "Parties" means the entities entering into this Settlement Agreement.

10.     "Plaintiffs" means the Natural Resources Defense Council, Inc. and Los Angeles Waterkeeper, formerly known as Santa Monica Baykeeper.

11.     "Residential stormwater retrofit projects" or "residential stormwater retrofits" means small-scale distributed-infrastructure projects intended to reduce stormwater runoff, improve water quality, and/or promote water infiltration and reuse. Residential stormwater retrofits include, for example, but are not necessarily limited to:

     a.      Downspout disconnects;

     b.      Swales;

     c.      Infiltration trenches;

     d.      Rainwater harvest and reuse (*e.g.*, rain barrels or cistern installation);

     e.      Rain gardens;

     f.      Reduction of impervious surfaces;

     g.      Flow-through planters;

     h.      Porous pavement;

     i.      Green roofs.

12.     "Settlement Agreement" means this Settlement Agreement and any attachments or exhibits expressly incorporated by reference into this Settlement Agreement.

13.     "Supplemental Environmental Projects" means the environmentally beneficial projects identified in sections II.A.3 and II.A.4 of this Settlement Agreement that are to be implemented or funded by Defendants.

4

14.     "Technically infeasible" means cannot be accomplished because of public safety considerations, unacceptable environmental impacts, local ordinances or regulations, physical inability based on reasonable engineering judgment, or an inability to obtain any necessary permits. Cost and expense are not factors to be considered when determining technical infeasibility.

15.     "2001 Los Angeles County Municipal Stormwater Permit" means California Regional Water Quality Control Board, Los Angeles Region, Order No. 01-182, as amended.

16.     "103rd Street Project" means the Supplemental Environmental Project described in section II.A.3 below.

## II.     TERMS

### A.     Supplemental Environmental Projects

1.     Defendants agree to construct or fund the Supplemental Environmental Projects as described and set forth in sections II.A.3 and II.A.4 below.

2.     With regard to the Supplemental Environmental Projects, Defendants certify the truth and accuracy of each of the following:

a.     As of the Execution Date of this Settlement Agreement, Defendants are not required to perform or develop the Supplemental Environmental Projects by any federal, state, or local law or regulation, nor are Defendants required to perform the Supplemental Environmental Projects by agreement, grant, or as injunctive relief awarded in any other action in any forum;

b.     The Supplemental Environmental Projects will not be used to satisfy Defendants' existing statutory obligations or municipal stormwater permit requirements;

c.     The Supplemental Environmental Projects are not projects that Defendants intended to construct, perform, or implement other than in settlement of this Litigation;

d.     Defendants have not received, and are not negotiating to receive,

5

credit for the Supplemental Environmental Projects in any other enforcement action;

e.     Defendants will not receive any reimbursement for any portion of the cost of the Supplemental Environmental Projects from any other person.

3.     **103rd Street Project**

a.     Defendants, or either of them, will design and build or contract for the design and building of a "green streets" project to improve and enhance 103rd Street in Los Angeles, California, between South Central Avenue and Success Avenue, with the central objectives of curbing stormwater runoff, minimizing stormwater pollution, increasing green space, and improving pedestrian access.

b.     Defendants anticipate, based on a reasonable analysis, that it will cost $2,659,000 to complete the 103rd Street Project. If the 103rd Street Project costs more than $2,659,000, Defendants agree to spend the necessary additional money to complete the Project. Defendants will not be required to allocate any additional money to another project if the 103rd Street Project costs less than $2,659,000.

c.     A map indicating the intended location of the 103rd Street Project is attached to this Settlement Agreement as Exhibit 1.

d.     The 103rd Street Project will include the following elements, subject to subsections e through h below:

(1)     Rehabilitation along 103rd Street of the existing roadway, sidewalk and driveway repairs, enhanced crosswalks, and street light improvements;

(2)     A pervious concrete gutter along the south side of 103rd Street;

(3)     Placement of solar trash cans along the south side of 103rd Street, between South Central Avenue and Success Avenue;

(4)     Construction of a bioswale adjacent to the parking lot on the south side of Ted Watkins Memorial Park, replacement of existing ivy in the

6

parkway along the parking lot with drought-tolerant native vegetation, and the addition of curb cuts to allow stormwater to flow into the bioswale;

(5)     Placement of an additional bike rack in the Ted Watkins Memorial Park parking lot;

(6)     Removal of existing asphalt for diagonal parking on 103rd Street, construction of porous concrete in the diagonal parking area, and tree plantings along the diagonal parking area;

(7)     Installation of parkway low impact development upgrades along the south side of 103rd Street, which will include a combination of permeable pavement, curb cuts, swales, soil amendments, and drought-tolerant native vegetation;

(8)     Educational signage on the site that explains the purpose and environmental benefits of the 103rd Street project.

e.     During the design or construction of the 103rd Street Project, should Defendants, or either of them, determine that it is technically infeasible (as defined above) to include one of the elements set forth in subparagraph d above, the Parties will meet and confer in good faith in an attempt to resolve the issue. If the Parties cannot resolve the issue, any Party may invoke the dispute resolution process set forth in section II.E below for the purpose of determining whether the Project should be modified.

f.     Either or both Defendants will solicit public input on the design of the 103rd Street Project within 180 days of the Effective Date of the Settlement Agreement by holding a public workshop at a location within one mile of Ted Watkins Memorial Park to present tentative project design details to members of the local community and request feedback. The Parties agree to meet and confer within 30 days of the public workshop to discuss any appropriate modifications to the 103rd Street Project in response to public input. Defendants will hold in reserve an additional $141,000 to cover the cost of any modifications agreed to pursuant to this paragraph. Any portion of the $141,000 not added to the budget for the 103rd Street

7

Project for any such modification will be transferred to TreePeople within one year of the Effective Date of the Settlement Agreement for residential stormwater retrofits described in section II.A.4 below.

g.      The Parties may also mutually agree to modify the 103rd Street Project.

h.      Any modification of the 103rd Street Project under subsections e through g above, unless ordered by the District Court pursuant to dispute resolution, must be agreed to by the Parties and reflected in a written amendment to this Settlement Agreement. The written amendment need not be filed with the District Court, but can be introduced without objection in any proceeding before the District Court.

i.      Defendants, or either of them, will commence the 103rd Street Project within 120 days of the Effective Date of the Settlement Agreement. Defendants, or either of them, will complete construction of the 103rd Street Project within 4 years of the Effective Date.

j.      Defendants, or either of them, will provide Plaintiffs with quarterly written updates on the status of the 103rd Street Project, beginning 180 days from the Effective Date of this Settlement Agreement and continuing until completion of the project.

k.      Within 120 days of completion of the 103rd Street Project, Defendants, or either of them, will provide Plaintiffs with a final project completion report. The final report will certify that the project was completed consistent with the requirements of this Settlement Agreement and will quantify the benefits associated with the project, including an explanation of how the benefits were measured or estimated.

4.      **Residential Stormwater Retrofits**

a.      Defendants, or either of them, will pay a total of $1,200,000 to fund residential stormwater retrofit projects located in the unincorporated area of the County of Los Angeles and within the Los Angeles County Flood Control District.

b.      Within 5 days of the Execution Date of this Settlement Agreement,

Plaintiffs will send a copy of this Settlement Agreement to TreePeople. Within 14 days of TreePeople's receipt of this Settlement Agreement, Defendants, or either of them, will seek to obtain from TreePeople a letter, addressed to the United States Department of Justice, EPA, and the Parties, confirming TreePeople's commitment and intent to spend the designated funds consistent with all requirements of this Settlement Agreement, including the priorities for residential stormwater retrofits listed in subsection d, below.

   c. Within 30 days of the Execution Date of this Settlement Agreement, Defendants, or either of them, will seek to enter into a contract with TreePeople for the purpose of managing a program for residential retrofits consistent with the terms of the Settlement Agreement. Plaintiffs will have the right to review the proposed contract, or any proposed modification of the contract, and object to any term contained therein as inconsistent with the terms of the Settlement Agreement. If the Parties cannot resolve any objection by Plaintiffs to any term of the proposed contract, any Party may invoke the dispute resolution process set forth in section II.E below.

   d. Within 60 days of the Effective Date of this Settlement Agreement or 60 days after the Defendants, or either of them, enter into a contract with TreePeople, whichever is later, Defendants, or either of them, will transfer to TreePeople $1,200,000 for the funding of residential stormwater retrofit projects, as outlined in the contract. The contract with TreePeople will contain the following conditions:

    (1) TreePeople will expend or commit for expenditure the funds transferred to it within 3 years of the date the funds are transferred to it.

    (2) Only projects intended for single-family residences or residences of 4 units or less can qualify as residential stormwater retrofit projects. TreePeople will implement, by itself or through partnerships with community-based organizations as described below in subparagraph d(3), residential stormwater retrofit projects at 25 to 40 such residences, unless infeasible. The residences will be in more than one neighborhood.

(3)     Of the $1,200,000 in funding, TreePeople will grant at least $400,000 to community-based organizations in Los Angeles County to participate in collaborative projects in partnership with TreePeople to implement the residential stormwater retrofits required by the Settlement Agreement.

(4)     TreePeople will expend or commit for expenditure the funds transferred to it on projects that meet one or more of the following criteria:

(a)     Projects that capture or infiltrate stormwater for beneficial reuse;

(b)     Projects that mitigate the impacts of metals and bacteria in stormwater runoff;

(c)     Projects in disadvantaged communities, defined to mean communities with an annual median household income below $48,875, or 80% of the statewide median household income;

(d)     Projects in census tracts with an overall score of 81% or higher using the California Communities Environmental Health Screening Tool, developed by the California Environmental Protection Agency's Office of Environmental Health Hazard Assessment to help direct investments to California communities that are disproportionately burdened by multiple sources of pollution;

(e)     Projects that demonstrate a commitment to engage the local community in project design and implementation, and a commitment to publicly promote the project upon completion.

(5)     TreePeople will endeavor to coordinate with workforce development organizations to train local residents on installation and maintenance of the residential stormwater retrofits.

(6)     TreePeople will seek opportunities to leverage the residential stormwater retrofit funds allocated to it under this Settlement

10

Agreement with outside resources or additional sources of funding to achieve greater community impacts.

(7)     TreePeople will provide an annual report to the United States Department of Justice, EPA, and the Parties on the status of the residential stormwater retrofit projects, beginning one year after receipt of the funds transferred to it.

(8)     Within 30 days of expenditure or commitment of all funds, TreePeople will provide a final letter or report to the United States Department of Justice, EPA, and the Parties describing its expenditure or commitment of the funds transferred to it and explaining how TreePeople has satisfied the requirements of this Settlement Agreement. The letter will address the following metrics:

(a)     Estimated total volume of stormwater captured or diverted;

(b)     Total area of impervious surface removed;

(c)     Number of residences at which a retrofit was installed;

(d)     Extent and effectiveness of community engagement efforts, if applicable.

**B.     Payment of Litigation Costs**

1.     Defendants will pay Plaintiffs the sum of $3,300,000, which constitutes settlement of all Plaintiffs' claims for attorneys' fees and other costs incurred by Plaintiffs in this Litigation, from its commencement to the present. The payment will be made within 30 days of the Effective Date of this Settlement Agreement. The payment will be made in the form of a check or warrant payable to Natural Resources Defense Council and sent to the following address: Natural Resources Defense Council, 40 West 20th Street, New York, NY 10011, Attn: Hiawatha Barno.

2.     Plaintiffs do not waive any claims to recovery for costs or fees incurred in this Litigation after the Effective Date of this Settlement Agreement, in the event Plaintiffs file a successful motion to enforce this agreement. Defendants reserve all defenses to any such claim for costs or fees.

**C.     Federal Agency Review**

1.     Within 2 days after the Execution Date of this Settlement Agreement, Plaintiffs will serve a copy of the executed Settlement Agreement on the EPA Administrator, the Regional Administrator of EPA Region 9, and the United States Attorney General (collectively, the Federal Agencies), consistent with 40 C.F.R. § 135.5.

2.     Within 5 days of service of this Settlement Agreement on the Federal Agencies, the Parties will jointly file a Notice of Tentative Settlement and Commencement of 45-Day Review Period with the District Court.

3.     If the Federal Agencies object to any provision of this Settlement Agreement, the Parties will meet and confer within 14 days of receiving those objections to attempt to resolve the issue or issues raised by the Federal Agencies.

**D.     Dismissal of Litigation with Prejudice**

1.     **Dismissal of District Court Proceedings**. Forty-five days after the Federal Agencies receive the Settlement Agreement or, if sooner, upon the Parties' receipt of notice that the Federal Agencies have no objections to the terms of the Settlement Agreement, the Parties will promptly file a Stipulation in the form attached hereto as Exhibit 2 requesting the Court to enter a judgment first retaining jurisdiction to enforce the Settlement Agreement and then dismissing with prejudice pursuant to Fed. R. Civ. P. 41(a)(2). A copy of the Settlement Agreement will be attached to the proposed Judgment.

2.     **Dismissal of Appeal**. Within 3 days of the Effective Date of this Settlement Agreement, Plaintiffs will file a motion pursuant to Fed. R. App. P. 42 to dismiss the pending appeal in *Natural Resources Defense Council v. County of Los Angeles*, Case No. 15-55562 (9th Cir.).

E.      **Dispute Resolution and Force Majeure**

1.      **Informal Dispute Resolution**. The Parties will attempt to resolve disputes informally. In the event that a dispute arises between the Parties, any Party may invoke the dispute resolution provisions of this Settlement Agreement to resolve such dispute.

2.      **Notice**. Prior to making any motion to enforce the terms of this Settlement Agreement, a Party to this Settlement Agreement will notify all other Parties in writing of the matter in dispute. The Parties will then meet and confer within 21 calendar days of the date of the notice in a good faith attempt to resolve the dispute without soliciting the District Court's involvement.

3.      **Formal Dispute Resolution**. If the Parties cannot resolve any dispute by the end of meet and confer negotiations, the Party or Parties invoking the dispute resolution provision of this section will provide written notice to the other Parties if it intends to file a motion to enforce the Settlement Agreement in District Court. The moving Party or Parties will provide such notice at least 7 calendar days in advance of making any motion. The District Court will resolve the dispute.

4.      **Exclusive Remedy**. The Parties acknowledge that this Settlement Agreement provides for dispute resolution, which is the sole and exclusive remedy, and the Parties may not otherwise petition the Court for relief for violations of the Settlement Agreement or bring a new action for breach of this Settlement Agreement.

5.      **Deadlines**. The Parties agree that, to the extent any task or deadline hereunder is affected by resort to dispute resolution, the deadline for such task will be extended for an appropriate period of time. The Parties will discuss the need for such an extension and attempt to reach agreement regarding the length of the extension. If a dispute regarding such extension develops, either Party may invoke the dispute resolution process set forth in this Settlement Agreement.

6.      **Force Majeure and Impossibility**.  Defendants' obligation to comply with one or more of the provisions of this Settlement Agreement will be deferred to the extent

13

and for the duration that the delay in compliance is caused by force majeure or impossibility. Force majeure includes any war, fire, earthquake, flood, or other natural disaster, or any restraint by court order or public authority that could not have been reasonably foreseen and prevented by Defendants' exercise of due diligence. Impossibility means an event or circumstances beyond Defendants' reasonable control that precludes timely compliance with the Settlement Agreement and that could not have been reasonably foreseen and prevented by Defendants' exercise of due diligence. If Defendants seek to rely upon this paragraph to delay compliance with any provision of this Settlement Agreement, Defendants will have the burden of establishing that they could not reasonably have avoided, and despite the exercise of due diligence have been unable to overcome, the force majeure or impossibility.

7.     Delay in Defendants' compliance with a specific obligation under this Settlement Agreement due to force majeure or impossibility will not excuse or delay compliance with any other obligations required under this Settlement Agreement that are not affected by the force majeure or impossibility.

8.     Any delays caused by Defendants' failure to make diligent efforts to comply with the terms in this Settlement Agreement, or normal inclement weather, will not be considered to be circumstances beyond Defendants' control.

9.     If Defendants claim force majeure or impossibility, they will notify Plaintiffs in writing within 21 days of the date that Defendants first knew, or by the exercise of due diligence should have known, of the event or circumstance that caused or would cause a delay in compliance with this Settlement Agreement. The notice will describe the reason for the anticipated nonperformance and specifically refer to this section of the Settlement Agreement. The notice will describe the anticipated length of time the delay is expected to persist, the cause or causes of the delay, the measures taken or to be taken by Defendants to prevent or minimize the delay, the schedule by which those measures will be implemented, and the anticipated date of compliance.

10.     Plaintiffs will notify Defendants in writing of Plaintiffs' position regarding

14

any claim of delay or impediment to performance served under this section. Plaintiffs will provide that response within 14 days of receipt of any written notice served under this section.

        11.    If Plaintiffs agree that any delay or impediment to performance has been or will be caused by force majeure or impossibility, the Parties will agree in writing to a reasonable modification of all requirements affected by the force majeure or impossibility. The written agreement need not be filed with the District Court, but will be an amendment to this Settlement Agreement and can be introduced without objection in any proceeding before the District Court.

        12.    If Plaintiffs disagree with any notice served by Defendants under this section or the explanation of force majeure or impossibility contained therein, or if the Parties cannot agree on the terms of new performance requirements, any Party may invoke the dispute resolution procedures of this Settlement Agreement.

        **F.**    **Mutual Release of Liability**

        1.    **Mutual Release**. In consideration of the undertakings set forth in this Settlement Agreement, and except for claims for any Party's failure to comply with this Settlement Agreement, upon the Effective Date of this Settlement Agreement, the Parties hereby fully release each other and their respective successors, boards, assignees, officers, agents, and employees from any and all claims that are alleged or could have been alleged in Plaintiffs' Complaint or First Amended Complaint, up to and including the Effective Date of this Settlement Agreement.

        2.    **No Admission of Liability**. Nothing in this Settlement Agreement constitutes or may be construed as an admission or evidence of any fault, wrongdoing or liability whatsoever on the part of any Party, and no such inference may be drawn therefrom.

        3.    **Waiver of California Civil Code Section 1542**. Each of the Parties acknowledges and warrants that its signing representatives have read and understand the provisions of California Civil Code section 1542 and each of the Parties expressly, voluntarily, and knowingly waives any and all rights it may have under Civil Code section 1542 with respect

to the release set forth in paragraph F.1 above.  Section 1542 provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

**G.     Miscellaneous Provisions**

1.     **Retention of Jurisdiction**. The District Court has jurisdiction over this action. The Parties' dismissal of this action is contingent on the District Court first retaining jurisdiction over this matter for purposes of modifying or enforcing the terms of this Settlement Agreement if necessary. If the District Court declines to retain jurisdiction, this Settlement Agreement is not effective and any stipulation of dismissal is null and void.

2.     **Choice of Law**. The laws of the United States and the State of California govern this Settlement Agreement.

3.     **Severability**. If any provision, paragraph, section, or sentence of this Settlement Agreement is held by a court to be unenforceable, that unenforceable portion will be severed and the validity of the remaining provisions will not be affected.

4.     **Notice**. All notices or reports required by this Settlement Agreement, and all other correspondence between the Parties pertaining to this Settlement Agreement, will be sent to the Parties' representatives as follows:

*For Plaintiffs*:

Aaron Colangelo
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
acolangelo@nrdc.org

Steve Fleischli
Natural Resources Defense Council
1314 Second Street
Santa Monica, CA 90401
sfleischli@nrdc.org

Daniel Cooper
Lawyers for Clean Water
1004-A O'Reilly Avenue
San Francisco, CA 94129
daniel@lawyersforcleanwater.com

Bruce Reznik
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, CA 90401
bruce@lawaterkeeper.org

16

*For Defendants*:

| | |
|---|---|
| Assistant Deputy Director | Judith Fries, Esq. |
| Watershed Management Division | Principal Deputy County Counsel |
| Los Angeles County Dept. of Public Works | 500 W. Temple Street, Rm. 653 |
| 900 South Fremont Avenue | Los Angeles, CA 90012 |
| Alhambra, CA 91803 | jfries@counsel.lacounty.gov |

Howard Gest
Burhenn & Gest LLP
624 South Grand Ave., Suite 2200
Los Angeles, CA 90017
hgest@burhenngest.com

Any Party may designate a new person or persons to receive notice. All written communications between the Parties required by this Settlement Agreement will be sent by email and first-class mail. Any change of address will be communicated in the same manner. Notice is deemed effective upon receipt if notice is provided personally, one day after sending if sent by express delivery service, or five days after if sent by first-class mail. The Parties agree to copy each other on any correspondence with the United States Department of Justice, EPA, or representatives of TreePeople regarding this Settlement Agreement or the Supplemental Environmental Projects it requires.

> 5. **Full Resolution of Dispute**. The Parties enter into this Settlement Agreement for the purpose of resolving all claims and disputes that arise out of or relate to the facts and allegations in Plaintiffs' Complaint and First Amended Complaint.

> 6. **Effect of Settlement Agreement**. Nothing in this Settlement Agreement will be construed to affect or limit Defendants' obligations to comply with all federal, state, and local laws and regulations governing any activity required by this Settlement Agreement.

> 7. **No Transfer or Assignment**. Each of the Parties warrants and represents that it has not assigned or transferred or purported to assign or transfer, voluntarily, involuntarily, or by operation of law, any claim, cause of action, or matter released pursuant to this Settlement Agreement, or any part or portion thereof, to any person or entity not a party to this Agreement.

17

8.    **Jointly Drafted.** The Parties have jointly drafted this Settlement Agreement, and the Agreement may not be interpreted against or in favor of any of the Parties that participated in drafting the Agreement as a result of their participation.

9.    **Counterparts.** This Settlement Agreement may be executed in any number of counterparts, all of which together constitute one original document.

10.    **Modification.** This Settlement Agreement and its provisions may not be changed, waived, discharged, or terminated unless by a written amendment signed by the Parties. Any written amendment need not be filed with the District Court, but can be introduced without objection in any proceeding before the District Court.

11.    **Final Settlement.** This Settlement Agreement constitutes a full and final settlement of this Litigation.

12.    **Complete Agreement.** This is an integrated agreement. This Settlement Agreement is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Settlement Agreement.

13.    **Authority.** The undersigned representatives for Plaintiffs and Defendants each certify that he/she is fully authorized by the Party or Parties whom he/she represents to enter into the terms and conditions of this Settlement Agreement.

14.    **Binding Agreement.** The provisions of this Settlement Agreement apply to, bind, and inure to the benefit of the Parties, including any successors or assignees. The Parties agree not to contest the validity of this Settlement Agreement in any subsequent proceeding to implement or enforce its terms.

15.    **Effective Date.** This Settlement Agreement is effective as of the Effective Date defined herein.

Dated:  ___9/27/16___                    Natural Resources Defense Council, Inc.

18

By: _____
Name: Steve Fleischli
Title: WATER Program Director

Dated: 9/27/16

Los Angeles Waterkeeper

By: _____
Name: Bruce Reznik
Title: Executive Director

Dated: 9-27-16

County of Los Angeles

By: _____
Name: Gail Farber
Title: Director, Department of Public Works

Dated: 9-27-16

Los Angeles County Flood Control District

By: _____
Name: Gail Farber
Title: Chief Engineer

APPROVED AS TO FORM:

Aaron Colangelo
Catherine Marlantes Rahm
Natural Resources Defense Council, Inc.
1152 15th Street NW, Suite 300
Washington, DC 20005
Attorneys for Plaintiff Natural Resources Defense Council, Inc.

Daniel Cooper
Lawyers for Clean Water
1004A O'Reilly Avenue

19

San Francisco, CA 94129
Attorneys for Plaintiff Los Angeles Waterkeeper
f/k/a Santa Monica Baykeeper

MARY C. WICKHAM
County Counsel

By: _____
            Deputy
Attorneys for Defendants County of Los Angeles
and Los Angeles County Flood Control District

20

EXHIBIT 1

# Exhibit 1: 103rd Street between
## South Central Avenue and Success Avenue



County of Los Angeles

Century  Blvd

City of Los Angeles

Success  Av

E  103rd  St

S  Central  Av

**103rd Street Project**

Pacific
Ocean

Los Angeles River

San Gabriel River

**Legend**

|||||||||| 103rd Street Project Location

▭ Unincorporated County Area

0  0.025  0.05     0.1
Miles

Source: Esri, DigitalGlobe, GeoEye, Earthstar Geographics, CNES/Airbus DS, USDA, USGS, AEX,
Getmapping, Aerogrid, IGN, IGP, swisstopo, and the GIS User Community

# EXHIBIT 2

MARY C. WICKHAM, County Counsel
ROBERT C. CARTWRIGHT, Assistant County Counsel
JUDITH A. FRIES, Principal Deputy (SBN 070897)
jfries@counsel.lacounty.gov
500 W. Temple St., Rm. 653
Los Angeles, California 90012
Telephone:  (213) 974-1923
Facsimile:   (213) 687-7337

BURHENN & GEST LLP
HOWARD GEST (SBN 076514)
hgest@burhenngest.com
DAVID W. BURHENN (SBN 105482)
dburhenn@burhenngest.com
624 South Grand Avenue, Suite 2200
Los Angeles, California 90017
Telephone:  (213) 688-7715
Facsimile:   (213) 624-1376

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC. and SANTA MONICA BAYKEEPER,<br><br>          Plaintiffs,<br><br>   v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>          Defendants. | Case No. CV 08-1467 BRO (PLAx)<br><br>STIPULATION TO RETAIN JURISDICTION TO ENFORCE SETTLEMENT AGREEMENT AND DISMISS ACTION WITH PREJUDICE<br><br>[Federal Rule Civ. Pro. 41(a)(2)] |

WHEREAS Plaintiffs and Defendants County of Los Angeles and Los Angeles Flood Control District have entered into a Settlement Agreement that achieves a full and final settlement of all of Plaintiffs' claims against all Defendants in this action; and

WHEREAS the Parties in their Settlement Agreement have agreed to stipulate to entry of a judgment in the form attached hereto as Exhibit A, with the Court retaining jurisdiction to resolve any disputes between the parties with respect to enforcement of

1

any provision of the terms of the settlement agreement, and dismissing this action with prejudice;

IT IS HEREBY STIPULATED, by and between the Parties, through their undersigned counsel, that the Court can enter judgment in this action in the form attached hereto as Exhibit A.

Dated: _____          AARON COLANGELO
                                 CATHERINE MARLANTES RAHM
                                 JACLYN PRANGE


                                 By: _____
                                     Aaron Colangelo
                                 Attorneys for Plaintiff Natural Resources Defense Council, Inc.

Dated: _____          LAWYERS FOR CLEAN WATER, INC.
                                 DANIEL COOPER


                                 By: _____
                                     Daniel Cooper
                                 Attorneys for Plaintiff Los Angeles Waterkeeper

Dated: _____          MARY C. WICKHAM, County Counsel
                                 ROBERT C. CARTWRIGHT, Asst. County Counsel
                                 JUDITH A. FRIES, Principal Deputy

                                 BURHENN & GEST LLP
                                 HOWARD GEST
                                 DAVID W. BURHENN


                                 By: _____
                                     Howard Gest
                                 Attorneys for Defendants

2

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC. and SANTA MONICA BAYKEEPER,<br><br>           Plaintiffs,<br><br>   v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>           Defendants.<br>_____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. CV 08-1467 BRO (PLAx)<br><br>JUDGMENT RETAINING JURISDICTION TO ENFORCE SETTLEMENT AGREEMENT AND DISMISSING ACTION WITH PREJUDICE |

WHEREAS Plaintiffs and Defendants County of Los Angeles and Los Angeles Flood Control District have entered into a Settlement Agreement that is a full and final settlement of all of Plaintiffs' claims against all Defendants in this action;

WHEREAS the parties in their Settlement Agreement have stipulated to the Court retaining jurisdiction to enforce the Settlement Agreement, and to dismissing this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2);

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction for the purpose of resolving any disputes between the parties with respect to enforcement of any provision of the terms of the parties' Settlement Agreement attached hereto as Exhibit A;

1

1    IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this action is
2 dismissed with prejudice.
3    Except as set forth in the Settlement Agreement, each party shall bear its own
4 costs and attorneys' fees.
5 Dated: _____
6
7                                   _____
                                    United States District Judge
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27                                                     2
28
_____
JUDGMENT RETAINING JURISDICTION TO ENFORCE SETTLEMENT AGREEMENT AND
DISMISSING ACTION WITH PREJUDICE